George A. ALBERT, Plaintiff-Appellant,

v.

Honorable John CHAFEE, Secretary of the Navy, J. A. Hiegel, Capt., CEC USNR, Pearl Harbor, Cecil N. Vorheis, Charles N. Arnold, Edward Moniz, and Richard G. Akeroyd, Defendants-Appellees.

No. 75–1819.

United States Court of Appeals, Ninth Circuit.

July 29, 1977.

As Amended Dec. 15, 1978.

---

Robert A. Rowan, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, argued for plaintiff-appellant.

Stanley D. Tabor, Asst. U. S. Atty., Honolulu, Hawaii, argued for defendants-appellees.

Before BROWNING, TRASK and KENNEDY, Circuit Judges.

PER CURIAM:

This litigation developed as a result of the permanent removal of George Albert from his employment as a civil service career employee with veteran status at the Pearl Harbor Navy Public Works Center, Honolulu, Hawaii.

In *Albert v. Chafee,* 465 F.2d 367 (9th Cir. 1972), we held that jurisdiction existed in the district court pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* to hear the controversy.[1] We described the standards governing the court's review of agency action:

1. In *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Supreme Court concluded that "the APA [Administrative Procedures Act] does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." It noted, however, that the effect of a recent amendment to 28 U.S.C. § 1331(a), which eliminates the requirement of a specified amount-in-controversy in an action against a government agency, "is to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate." *Id.* at 105, 97 S.Ct. at 984. Title 28 U.S.C. § 1331(a) now provides:

" '[W]hether the agency substantially complied with its statutory and regulatory procedures, whether its factual determinations were supported by substantial evidence, and whether its action was arbitrary, capricious or an abuse of discretion.' " *Id.* at 368.

On remand, affidavits and memoranda filed by both sides sought summary judgment. Ultimately, the Navy prevailed, and the removal was sustained. Albert has appealed.

On October 11, 1967, Congress enacted Public Law 90–105, now codified in 5 U.S.C. § 3304a. This law conferred career status upon individuals in the competitive service under an indefinite or temporary appointment upon completion of at least three years' employment. Appellant had been awarded such status. On December 22, 1967, Albert received a document entitled "Letter of Requirement" signed by Mr. Edward D. Moniz, his immediate supervisor and a defendant in this action. It purported to confirm a December 19 oral conversation with Mr. Moniz. In it, Mr. Moniz outlined some of the responsibilities of Albert as a government employee and related some of the complaints Moniz asserted he had received about Albert's work. It concluded with a paragraph emphasizing the necessity of following guidelines and complying with regulations. Moniz stated:

"This letter of requirement is issued to impress upon you the importance of good conduct, following guidelines and complying with regulations. It is also meant to assist you in order to prevent infractions that could result in disciplinary action.

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." We find that pursuant to this section Albert is properly in federal court.

*Since this is not a disciplinary or adverse action, it is not appealable through grievance procedure. This letter will not become a part of your official personnel folder. However, it will be retained in the shop files for a period of one year."* (Emphasis added.)

Albert did not respond, except to add some personal notes in the margin. Needless to say, the letter became an important part of the file in further proceedings, notwithstanding its statement that it would not become a part of Albert's official personnel folder.[2]

On August 1, 1968, a pickup truck was assigned to Albert by Moniz, who cautioned him concerning government limitations on its use. The following day, he was given three job orders by Moniz, and he proceeded in the truck with a helper to the site where repairs were to be made. One of the orders was erroneous but was corrected by means of a telephone call to Moniz. The job assignments were then completed, and Albert returned to Building 250, which was his reporting site. The helper was let off, and Albert proceeded a distance of approximately one mile to the Sub Base Small Stores, where he met his son and purchased a Naval Sea Cadet Uniform and a pair of shoes for him. The store was open only during working hours, and his son had a training exercise the next day. About one hour was consumed in attending to this personal errand. There was no accident or untoward event to cause damage to the truck, and it did not leave the confines of the base during the errand. On return, Albert picked up his helper at Building 250, where they waited another five minutes in order to insure their arrival at the Public

Works Center compound at the specific time they had been directed to return.

On August 27, 1968, appellant received from Mr. Vorheis, the head of the utilities department, a letter of proposed removal.[3] For its reasons for removal, the letter relied upon the incident of August 2, 1968 and the Letter of Requirement of December 22, 1967.[4]

■ As we have indicated previously, the scope of judicial review of agency action is narrow:

"Assuming that statutory procedures meet constitutional requirements, the court is limited to a determination of whether the agency substantially complied with its statutory and regulatory procedures, whether its factual determinations were supported by substantial evidence, and whether its action was arbitrary, capricious or an abuse of discretion." *Toohey v. Nitze*, 429 F.2d 1332, 1334 (9th Cir. 1970), *cert. denied*, 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971).

This standard is based upon the scope of review outlined in section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

■ Given this limited scope of review, an examination of the record persuades us that the failure to give appellant advance notice of all the charges brought against him was a denial of his due process right to a decision in compliance with statutory and regulatory procedures. Title 5 U.S.C. § 7512(b)(1) provides:

"(b) A preference eligible employee [such as appellant] against whom adverse action is proposed is entitled to—

---

2. Because of the underlined portion of the letter, appellant was led to believe that it did not constitute disciplinary or adverse action, was not appealable, and would not constitute a part of his personnel folder. He therefore took no steps to contradict charges made in it. To his dismay and undoubted prejudice, it followed him through the entire proceeding, being included in his file at every step as "Background material." In the final review of Captain J. A. Hiegel, Commanding Officer, it was referred to eight different times to support the position of the Captain in affirming the termination.

3. On August 22, 1968, Albert had received a letter of commendation from the Navy Public Works Center recognizing his initiative in making certain suggestions which proved beneficial to the Public Works Center. (C.T. A38).

4. The formal charges were: (a) Misuse of a Government Vehicle; and (b) Disobedience to Constituted Authorities—both offenses having occurred during working hours on August 2, 1968.

"(1) at least 30 days' advance written notice, except when there is reasonable cause to believe him guilty of a crime for which a sentence of imprisonment can be imposed, stating any and all reasons, specifically and in detail, for the proposed action".

At the time of Albert's appeal at the administrative level, the Federal Personnel Manual (FPM), ch. 752, § 2–6, stated that the final agency action had to be based on the charges contained in the notice of proposed agency action:

"The agency may not . . . substitute a more severe action than originally proposed, nor may it rely on reasons which were not stated in the initial notice; a change of either type is a defect requiring the adverse action to be started entirely anew."

FPM Supp., ch. 752–1, § S4–2b(1), promulgated after Albert's administrative appeal but still relevant to our decision, imposes similar requirements:

"If previous infractions are cited for the first time in a decision notice in a manner that appears to justify the action, this would probably be regarded as evidence that reasons other than those stated in the advance notice were considered by the administrative officer in taking the adverse action. This would justify a reversal on the ground the employee had not been given 'any and all reasons' in the advance notice."

After appellant was notified by his supervisor of his removal, he exercised his right to an appeal at the administrative level. However, Richard Akeroyd, the hearing officer who examined appellant's case on appeal, made several findings which were not specifically alleged, as required, in the original notice of proposed removal. (1) The hearing officer found that appellant had disobeyed his superiors by failing to complete two work assignments on August 2, 1968. This finding was beyond the scope of the advance notice since it involved neither excessive mileage, physical deviation from a work assignment in a government vehicle, failure to contact supervisors, nor failure to complete a trip ticket form, the primary subjects of the advance notice. (2) The hearing examiner found that appellant had used a government vehicle to make an additional side trip not mentioned in the advance notice. (3) As part of appellant's failure to complete a form upon his return to the base, the examiner stressed that he had not filled in the mileage section of the trip ticket. The advance notice, however, did not mention this omission.

The most damaging evidence against appellant was his use of a government vehicle to perform a personal errand. However, the hearing examiner did discuss these other abuses in his findings regarding appellant's misuse of a government vehicle and disobedience to constituted authorities. The district court found that the examiner relied heavily on two of these findings, appellant's failure to finish his assigned duties and to complete the vehicle information form, in concluding that appellant had been disobedient. Absent evidence to the contrary, we can only assume that Captain Hiegel, who adopted the hearing examiner's conclusions and affirmed appellant's dismissal, based his decision at least partly on these findings. As evidence for our inference, we cite Hiegel's letter affirming appellant's removal, in which he stated explicitly that he concurred in the examiner's findings of fact. Similarly, in a letter to the Secretary of the Navy, Hiegel indicated that the previously unmentioned charges supported a finding of disobedience.

We cannot agree with the district court's conclusion that any discrepancy between the allegations in the proposed notice of removal and the findings made by the hearing examiner was harmless. Title 5 U.S.C. § 7512(b)(1) requires that the advance notice state "any and all reasons, specifically and in detail, for the proposed action". The regulations contained in the Federal Personnel Manual condemn an administrative decision, such as that in the present case, which cites previously unmentioned infractions in a manner which justifies the removal action. In such event, reversal is warranted "on the ground the employee

had not been given 'any and all reasons' in the advance notice." FPM Supp., ch. 752–1, § S4–2b(1).

The critical steps in the lengthy record are: (1) the notice of adverse action which is to be taken and the reasons for that action; (2) the proposed removal and notification of this removal; (3) and removal.

The notice must tell the employee what the problem is and what he may do to defend himself. Section 752, subchapter 2–2(e), of the Federal Personnel Manual provides that where a removal is proposed,

"The notice must tell the employee that he has a right to reply, both personally and in writing, and to submit affidavits in support of his answer    .    .    . .

.        .        .        .        .

"2–5(b)(1) If the employee requests an opportunity to make an oral reply, he is entitled to be heard by an agency representative or representatives who are superior to him and have the authority either to take or to recommend final action. "2–5(b)(2) *The employee must be given an opportunity to make any oral plea he wishes which he believes may sway the decision in his favor.* It is not proper to restrict his reply to matters relating solely to the agency's reasons for proposing adverse action against him; he must be permitted to plead extenuating circumstances or make any other representations which he considers appropriate."

In Albert's case, a request was made for an informal hearing as outlined, but he was told that since a hearing is accorded only in the appellate process under the Navy procedures a formal hearing would not be held. In that same response, Vorheis stated:

"I also arranged for a representative of the Industrial Relations Office to meet with you this morning to answer any questions you may have concerning your rights in connection with reference (a)."

Reference (a) was "proposed removal; notification of." Thus, this offer was not in any way a response to section 752–2–5(b)(1) and 2–2(b). Albert did not receive a hearing until November 20, 1968, well *after* the dismissal.

In the overall plan, it appears to us that this pre-removal step is an important one. A person-to-person discussion to which appellant was entitled in a pre-discharge atmosphere is a substantial right. It is designed to take place in a relaxed atmosphere before irreversible positions are taken and hopefully to resolve all the proceedings that might thereafter be required. Once the termination order is entered, the record tends to become unalterable and opinions of a give and take character become hardened and difficult if not impossible to come by. The decision of the reviewing officer up the ladder can easily be more influenced by the decisions that have already been made and what decision-makers have made them than by a careful analysis to detect and uproot any injustice in the proceedings before.

■ The next step is taken from notice of adverse action generally, to the specific action. Here, that became removal and the procedure called for was "the proposed removal; notification of." The employee, then with an attorney to represent him, asked for a hearing and called for documents upon which the action to date had been predicated. He was furnished the documents and an evidentiary hearing was set for November 20, 1968. The charges were particularized as (a) Misuse of Government Vehicle and (b) Disobedience to Constituted Authorities.

With respect to the misuse of the government vehicle, we note that the total mileage logged was about 90 miles. Much if not all, can be accounted for by going to and from the work site in a straight line. But here, the course was not so direct. The building which was supposed to be opened was locked. A certain McCollum had the key, but McCollum was not there. Some additional driving was necessary in the line of duty to find McCollum and to complete the assignment. We do not find these additional miles such a deviation as to constitute a "misuse" of the vehicle. The additional driving which was unauthorized was the one mile to and one mile back to perform a

personal errand—to buy a uniform and shoes for his son to wear on a Naval Sea Cadet's exercise the next day.

As to the disobedience to constituted authorities, it is found that he did not contact his supervisor to obtain permission to deviate from the job assignment at Lualualie, "although he attempted to call twice." We question the conclusion that the first four particularizations constitute disobedience based upon failure to contact his supervisor. Appellant did attempt to call twice and was unable to complete either call. Perhaps his failure to wait and make additional calls was something to deserve a reprimand, but hardly merited a termination.

The other instances of failure to obey involve the completion of the repairs. Item 7 charges that he did not clean or inspect the telephones or make test calls. Yet the testimony of McCollum is to the effect that appellant and he were together and that McCollum, a central office repairman, made the test calls. C.T. at 166. It would seem that the important fact is that the test calls were made, not that one or the other made them. It was also charged that appellant did not clean the telephones, although no evidence was noted to support that charge.

Finally, on overall assessment it appears that what seems to be a trivial incident has been magnified out of all proportion to cause a hardship that cannot be justified. The record supporting such action when challenged develops into trivia. Thus, was the mileage in excess of the minimum 45 miles or 20 miles or none at all? Was appellant when he attempted to locate McCollum acting contrary to constituted authority or simply using good judgment to complete his duty assignment? All of this might have been avoided had the agency followed its own guidelines and directed a person-to-person interview under step one of the Federal Personnel Manual. Failure to do this constitutes procedural error. The finding that appellant put additional mileage on the government vehicle in attempting to locate McCollum and that this was a violation of regulations lacks common sense.

We are impressed by the treatment given a similar situation by the Court of Claims in *Power v. United States*, 531 F.2d 505, 209 Ct.Cl. 126 (1976). We also note with approval the case of *Murphy v. Kelley*, 259 F.Supp. 914 (D.Mass.), *aff'd*, 368 F.2d 232 (1st Cir. 1966), relied upon by the lower court. Although a removal from service was the outcome in *Murphy*, the comparison between the facts and logic of that case with the one before us would lead to an exoneration of Albert here. Murphy had been issued a motor vehicle to help him in his work but upon an understanding that he would park it at his home. In disregard of that agreement, he drove to the American Legion Hall, where he remained until 11:40 p. m. When he attempted to drive the government car home at near midnight, he ran the car off the road into a ditch, causing damage which required it to be towed away. While at the Hall, he had become intoxicated. The court observed:

"As we see it, this is a considerably more wilful misuse of a Government vehicle than a case where an employee who is en route on official business departs from the direct route for a brief distance and time to engage in a personal unofficial activity like shopping or making a social call on someone nearby; and then resumes his route on official business. The fact that the distance from Norwood to the American Legion Hall in Canton is just a couple of miles or so, is in our opinion, of less importance than the fact that the misuse of the vehicle was at night, well removed in point of time and place from any official purpose." *Id.* at 917 (Quoting the decision of the Appeals Examiner.)

Like the court in *Power*, we find that the decision here constitutes a rare but clearly apparent abuse of discretion. Even admitting all the charges, including the erroneous use of the December 22, 1967, letter, we find that the discipline invoked is so harsh when compared with the transgressions charged that it is simply illegal. *De minimis* wrongdoing is made completely disproportionate to the punishment.

We reverse the judgment of the court below with instructions to reinstate appellant immediately. Judgment accordingly.

KENNEDY, Circuit Judge, concurring:

I concur. In light of the trivial nature of the stated charges against appellant and the severity of the sanctions imposed, it was prejudicial to consider additional charges of which he had no notice.