671 F.2d 797
 109 L.R.R.M. (BNA) 2329, 92 Lab.Cas. P 13,179
 NORFOLK SHIPBUILDING AND DRYDOCK CORP., Appellee,
v.
LOCAL NO. 684 OF the INTERNATIONAL BROTHERHOOD OF
BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS,
FORGERS AND HELPERS, A.F. OF L.-C.I.O.;
and K. C. Nash, Appellants.
 No. 81-1214.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 7, 1981.
Decided Jan. 11, 1982.
 
 John H. Klein, Norfolk, Va. (Breit, Rutter & Montagna, Norfolk, Va., on brief), for appellants.
 G. William Birkhead, Norfolk, Va. (F. Nash Bilisoly, Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellee.
 Before BUTZNER, Circuit Judge, FIELD, Senior Circuit Judge, and SPROUSE, Circuit Judge.
 SPROUSE, Circuit Judge:
 
 
 1
 Local No. 684 of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO (Union), and K. C. Nash appeal the judgment of the district court in favor of Norfolk Shipbuilding & Drydock Corporation (Norfolk) invalidating the portion of an arbitration award which reinstated Nash to his position with Norfolk. The Union contends the district court erred in refusing to consider evidence as to the "custom and practice in the industry" or "the common law of the shop" in determining whether the arbitrator exceeded his authority under the applicable collective bargaining agreement. We agree and remand for consideration of such evidence.
 
 
 2
 Nash, a Union member and twenty-seven year employee[1] of Norfolk, was discharged by Norfolk for twice refusing to work overtime. He received a written warning when he refused to work overtime in August 1979 and was discharged when he again refused in October 1979. The discharge notice stated that the reason for discharge was a "(v)iolation of Rule No. 6: Insubordination, willful failure to observe instructions, or neglecting of duty with a belligerent attitude." The discharge was arbitrated in accordance with the provisions of the collective bargaining agreement between the parties.
 
 
 3
 Article XI, Section 8 of the agreement contains the language governing Norfolk's right to discharge Union employees. It provides in part:
 
 
 4
 The Company retains the right to discharge any employee for cause, and such right of discharge shall be deemed to include the right to suspend or otherwise discipline an Employee in lieu of discharge. It is agreed that violation of Company rules not inconsistent with the terms of this Agreement shall be considered just cause for discharge.
 
 
 5
 The company rules set out the actions which constitute cause for discharge. Rule 6 provides:
 
 
 6
 6. Insubordination, willful failure to observe instructions or neglecting of duty.
 
 
 7
 The Company Rules are prefaced by the statement:
 
 
 8
 The Company retains the right to discharge any Employee for cause, and such right of discharge shall be deemed to include the right to suspend or otherwise discipline an Employee in lieu of discharge.
 
 
 9
 The arbitrator found that Nash had unjustifiably refused to work overtime on October 5, 1979, and was thus properly subject to being disciplined by Norfolk. Nonetheless, he found, that:
 
 
 10
 There are mitigating circumstances which in my judgment dictate a penalty less than that imposed by the Company. Nash has been off the Company payroll since October 9, 1979-almost seven months. On balancing all the circumstances, a more equitable discipline would appear to be reinstatement with no back pay.
 
 
 11
 His award changed the discharge to a suspension and ordered Nash reinstated without back pay.
 
 
 12
 The district court held that the arbitrator, having found cause for the discharge, was without authority to alter the discipline imposed by Norfolk. The court, in conjunction with that holding, refused to admit evidence relating to "custom and practice" or "the common law of the shop" offered by the Union to demonstrate such arbitral authority.
 
 
 13
 The Union proffered evidence that Norfolk did not always discharge employees for violating company rules including refusing to work overtime; that Norfolk traditionally followed a policy of progressive discipline (administering progressively more severe penalties for successive violations of company rules); and that there had been three previous arbitration decisions accepted by Norfolk in which the arbitrator had reduced the penalty of discharge to a period of suspension without pay.[2]
 
 
 14
 It is, of course, axiomatic that a labor arbitration dispute is governed by the contract between the company and the union involved, United Steelworkers of America v. Enterprise Wheel and Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Manufacturing Company, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and the arbitrator is bound by this agreement. Moreover, his decision will not be disturbed by a court unless he has exceeded the authority given him by the contract. United Steelworkers v. Enterprise Wheel, supra. The court's inquiry is limited to whether the arbitrator's award draws its essence from the agreement of the parties. "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation is different from his." Id. at 599, 80 S.Ct. at 1362.
 
 
 15
 In construing the collective bargaining agreement, however, the arbitrator must take into account any existing common law of the particular plant or industry, for it is an integral part of the contract. United Steelworkers v. Warrior & Gulf, supra. The trial court, in the case sub judice, by refusing to consider the evidence proffered by the Union, could not have considered whether there was any custom and practice relating to the resolution of the dispute, and, therefore, could not properly determine if the arbitrator acted within his authority under the collective bargaining agreement. The judgment is therefore vacated and the case remanded to the trial court to consider the evidence proffered by the Union to determine whether there was any custom or practice in the plant which had been integrated into the contract giving the arbitrator authority to modify the penalty imposed by Norfolk.
 
 
 16
 REMANDED.
 
 FIELD, Senior Circuit Judge, dissenting:
 
 17
 In my opinion, the result reached by the majority in this case flies in the face of the plain and unambiguous language of the collective bargaining agreement (Agreement), and is squarely at odds with the law of this Circuit as set forth in Monongahela Power Co. v. Local No. 2332, 566 F.2d 1196 (1976) and Textile Workers Union of America v. American Thread Co., 291 F.2d 894 (1961).
 
 
 18
 Article XI, Section 8 of the Agreement and Rule 6 of the Company Rules provide that the Company's right to discharge "shall be deemed to include the right to suspend or otherwise discipline an Employee in lieu of discharge." In the words of the late Judge Dobie, this language is as "clear as crystal and crisp as bacon." Under this language, once a violation occurs, the Company can discharge an employee or it may, in its discretion, take some less severe disciplinary action. Disregarding this unambiguous language of the Agreement, however, the arbitrator took it upon himself to substitute his judgment for that of the Company, and selected the "more equitable discipline" of suspension.
 
 
 19
 In reducing the disciplinary action from discharge to suspension, the arbitrator, in effect, wrote into the contract a system of "progressive discipline". Such a system had been proposed by the Union during the contract negotiations between the parties but had been rejected and, accordingly, omitted from the final Agreement. Despite this fact, the majority, in effect, is now giving the Union an opportunity to obtain the benefit of a contract provision which it proposed and lost at the bargaining table. Such an anomaly was rejected by the Second Circuit in Torrington Co. v. Metal Products Workers Union Local 1645, 362 F.2d 677, 681 (2 Cir. 1966):
 
 
 20
 While it may be appropriate to resolve a question never raised during negotiations on the basis of prior practice in the plant or industry, it is quite another thing to assume that the contract confers a specific benefit when that benefit was discussed during negotiations but omitted from the contract.
 
 
 21
 In ruling in favor of the Company, the district judge understandably relied upon our decisions in Monongahela Power Co. and American Thread, supra, both of which are conspicuous by their absence from the majority opinion. In each of those cases, we held that the action of an arbitrator in substituting his judgment on the appropriate discipline for that of the employer violated the terms of the collective bargaining agreement and exceeded the limits of his authority. The law of this Circuit was clearly stated by Judge Russell in Monongahela Power Co.:
 
 
 22
 The powers of an arbitrator are not unlimited. He derives his authority from and is bound by the terms of the contract from which he draws his authority; and while "(H)e may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." His function is confined to the interpretation and application of the collective bargaining agreement under which he acts and, while he may give his own construction to ambiguous language, he is without any authority to disregard or modify plain and unambiguous provisions. This is a well-established principle of law; it is, also, specifically so provided in the agreement in this case.
 
 
 23
 In Article X of this agreement the employees bound themselves not to engage in a work stoppage during the currency of the agreement. The arbitrator found, and the parties take no exception to the finding, that the employees in this case did violate this provision of the agreement. As already stated, the Article specifies that, in such an event, the Company shall have the unqualified right to discipline or discharge the offending employees. The penalty to be imposed for violation of the Article was thereby specifically reserved to the Company and was in no way committed to the discretion or decision of an arbitrator. That provision, the agreement expressly stated, was not within the power of the arbitrator to amend, alter or nullify. The arbitrator in this case accordingly had no power or authority to change or amend the penalties imposed by the Company on the offending employees on account of their violation of the obligation under Article X of the collective bargaining agreement and his action in so doing was illegal and void.
 
 
 24
 566 F.2d at 1198-99. (footnotes omitted).
 
 
 25
 I would affirm the judgment of the district court.
 
 
 
 [1]
 In this twenty-seven year period, Nash left his employment three or four times for periods ranging from two to four months
 
 
 [2]
 This evidence was before the arbitrator