**Raymond L. McCLASKEY, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, Respondent.**

No. 82–7528.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 1983.

Decided Oct. 18, 1983.

William W. Kinsey, Portland, Or., for respondent.

D. Richard Hammersley, Portland, Or., for petitioner.

Before GOODWIN, WALLACE and REINHARDT, Circuit Judges.

WALLACE, Circuit Judge:

McClaskey appeals from an order of the Merit Systems Protection Board (board) affirming his discharge by the Bonneville Power Administration (agency) for "knowingly participating in a plan to prevent Government investigators from learning the truth about the unauthorized acquisition and use of wire paid for by the Bonneville Power Administration." McClaskey contends that the penalty of dismissal constituted excessive punishment, that the board failed to follow its own precedent in upholding the dismissal, and that his dismissal did not promote the efficiency of the service. We affirm.

I

McClaskey was an agency electrician with fourteen years of service and no disciplinary record. Two of McClaskey's co-employees, Lapp and Rhew, unlawfully used agency purchase documents to acquire wire for their personal use. The value of the wire was later estimated to be $418. Upon discovering this fraudulent use of its documents, the agency commenced an investigation. When Lapp and Rhew learned of it, they met with McClaskey to discuss ways to prevent the agency from discovering the theft. The three employees agreed to buy wire from a local electrical store to replace the stolen wire. McClaskey purchased the replacement wire with a personal check and, on the following morning, placed it in the appropriate storage bins at the agency. Later that day, Rhew informed McClaskey that the presence of the wire would not deceive the investigators, who already knew that the original wire had not been properly delivered. McClaskey removed the wire from the storage bins.

In response to the agency charge, McClaskey admitted knowing that Lapp had secured the wire without authorization using agency purchasing orders and that the incident was being investigated by government investigators. He further admitted using his personal check to purchase substitute wire and putting it in an agency storage bin for the purpose of ending the investigation and helping his friends. In his own words, McClaskey had attempted to "cover-up" the crimes of his two friends. All three men were discharged.

McClaskey appealed the agency's decision to the board's Seattle Regional Office. The presiding officer at the regional level reversed the agency's dismissal and suspended McClaskey for thirty days. The agency then petitioned the board for review and it reversed the regional presiding officer and reinstated McClaskey's dismissal.[1]

---

1. In response to the dissent's criticism, we emphasize that we have reported the facts as objectively as possible, based on the record before us. Indeed, our conclusions seem consistent with McClaskey's own characterization of his conduct. We do not go farther, as does the dissent, to draw conclusions from a silent record that McClaskey had an untarnished record—there was no evidence before the Board on this issue one way or the other. The agency sought dismissal of McClaskey based only on the cover-up.

The Board's comment that McClaskey's conduct could not have prevented the investigators "from learning the truth about this matter" does not change the facts. The cover-up of a crime is no less reprehensible merely because the plan never had any chance of succeeding. The dissent attempts to distinguish McClaskey's actions from those for which employees face criminal prosecution, e.g., Alsbury v. United States Postal Service, 530 F.2d 852 (9th Cir.1976). McClaskey could have faced criminal prosecution for conspiracy under 18 U.S.C. § 371. See Baker v. United States, 393 F.2d

## II

McClaskey admits committing the offense with which he was charged. His primary argument, and the only contention advanced at oral argument, is that the penalty of removal was excessively harsh and so disproportionate to his wrongdoing as to be unconscionable.

■ Our standard of review of the board's decision is set forth in 5 U.S.C. § 7703(c):

[T]he court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—

    (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (2) obtained without procedures required by law, rule, or regulation having been followed; or

    (3) unsupported by substantial evidence.

Under section 7703(c), our review of the board's choice of sanctions is extremely limited. We defer to the board's judgment unless the penalty is so harsh or disproportionate to the offense as to constitute an abuse of discretion. *Debose v. United States Department of Agriculture,* 700 F.2d 1262, 1269 (9th Cir.1983) (*Debose* ); *Francisco v. Campbell,* 625 F.2d 266, 267, 269 (9th Cir.1980); *Albert v. Chafee,* 571 F.2d 1063, 1068 (9th Cir.1977) (per curiam); *accord Gipson v. Veterans Administration,* 682 F.2d 1004, 1011 (D.C.Cir.1982); *Brewer v. United States Postal Service,* 647 F.2d 1093, 1098, 227 Ct.Cl. 276 (1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982); *Power v. United States,* 531 F.2d 505, 507, 209 Ct.Cl. 126 (1976).

We have found the penalty of dismissal to be excessively harsh only when the offense committed was extremely minor. In *Francisco v. Campbell,* for example, the

only charge proved against a civilian naval educational counselor was her failure to comply with an order that she not become involved in university administrative affairs. 625 F.2d at 267–69. We stated that the penalty of dismissal *may* have been excessively harsh, but left this question to be resolved by the board on remand. *Id.* at 270.

Likewise, in *Albert v. Chafee* the most serious offense against a naval employee was that he had used an official vehicle for a one-mile private errand to buy his son a cadet uniform. 571 F.2d at 1065. Although other charges were also brought, we stated that "[the] record supporting [the dismissal] when challenged develops into trivia." *Id.* at 1068. We concluded that "the discipline invoked is so harsh when compared with the transgressions charged that it is simply illegal. *De minimis* wrongdoing is made completely disproportionate to the punishment." *Id.*

McClaskey relies upon *Power v. United States,* a Court of Claims case which we cited with approval in *Albert v. Chafee,* 571 F.2d at 1068. In *Power,* an employee submitted false information on travel claims, including overstating his payment for temporary lodging by $50 and requesting reimbursement for certain meals for his wife. The agency was unable to prove, however, that the employee had acted in bad faith in submitting the claims; indeed, the court found it doubtful that he knew of the discrepancies. 531 F.2d at 508–09. The court found that dismissal for such minor offenses was "clearly too harsh and out of all proportion." *Id.* at 509.

■ McClaskey's case is clearly distinguishable from these cases. His offense is more serious. He admits deliberately committing the offense. Furthermore, because of the nature of his job, his deception will

604, 609 (9th Cir.), *cert. denied,* 393 U.S. 836, 89 S.Ct. 110, 21 L.Ed.2d 106 (1968) ("if ... [an employee who assists his employer in receiving and concealing stolen property] ... has knowledge that the property has been stolen and that his employer intends to convert it to his own

use, and if he conspires with his employer and others to effectuate that plan and actively participates therein, he is guilty of engaging in an unlawful conspiracy as defined in 18 U.S.C. § 371").

have a more deleterious effect on the agency.

McClaskey emphasizes that he did not participate in the original theft and that his only motivation for participating in the cover-up was to help his friends. These facts, however, do not negate the seriousness of his offense. When Lapp and Rhew approached McClaskey, they both informed him that the agency had already commenced an investigation. At that point, McClaskey did not merely fail to report his knowledge of the theft, but became actively involved in the attempt to deceive the agency and thwart its investigation.

McClaskey also stresses that he has worked for the agency for fourteen years, has had no disciplinary record, and is highly regarded by his supervisors and fellow employees. The board considered these factors in McClaskey's favor, but concluded that they were outweighed by other factors. Relying on the testimony of an agency official, the board stated that the "agency's mission requires that its employees be delegated a substantial amount of authority to make purchases of expensive tools and equipment, and that the only way in which the agency's system of allowing employees such purchasing authority can work effectively is to require each employee to meet a very high standard of honesty." The board found further that such a rigorous standard could only be maintained if employees were made aware that untrustworthy or dishonest employees would be disciplined quickly and firmly. Thus, the board did not automatically approve McClaskey's dismissal, but concluded that the penalty was reasonable in light of the seriousness of the offense, the agency's legitimate goal of fostering honesty on the part of its employees, and the damage the offense would have on the relationship between McClaskey and his employer. We cannot say that in striking the balance as it did the board abused its discretion.

We observe finally that both this and other circuits have upheld dismissals in other cases involving offenses which appear less serious or concerning employees with longer service records than McClaskey's. See Book v. United States Postal Service, 675 F.2d 158 (8th Cir.1982) (per curiam) (postmaster discharged for unofficial use and unauthorized possession of Postal Service property worth approximately $22); Brewer v. United States Postal Service, 647 F.2d 1093, 227 Ct.Cl. 276 (postal employee of 25 years discharged for falsifying another employee's timecard and removing an undeliverable piece of third-class mail from the post office); Alsbury v. United States Postal Service, 530 F.2d 852 (9th Cir.1976) (employee discharged for removing several items of postal property upon his transfer to a new post office).

We conclude that the penalty imposed by the board here was not so disproportionate to the offense as to amount to an abuse of discretion.

### III

McClaskey next argues that in imposing the dismissal sanction the board failed to follow its own precedent as set forth in Douglas v. Veterans Administration, 5 M.S.P.B. 313 (1981) (Douglas). Generally, an agency must follow its own precedent or explain its reasons for refusing to do so in a particular case. Atchison, Topeka & Santa Fe Railway v. Wichita Board of Trade, 412 U.S. 800, 807–08, 93 S.Ct. 2367, 2374–75, 37 L.Ed.2d 350 (1973); Secretary of Agriculture v. United States, 347 U.S. 645, 652–54, 74 S.Ct. 826, 830–32, 98 L.Ed. 1015 (1954); see Public Interest Research Group v. FCC, 522 F.2d 1060, 1064 (1st Cir.1975), cert. denied, 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976). If the board has failed to follow its own precedent, without offering a sufficient explanation, we may be required to reverse its decision.

In Douglas the board articulated twelve factors that may be considered in determining the appropriate sanction for a particular offense. 5 M.S.P.B. at 332. McClaskey argues in his brief that the agency and the board failed to balance these factors. At oral argument, however, McClaskey conceded that the board did properly weigh the Douglas factors. We

find this concession appropriate. The board's order and opinion indicates that it explicitly considered at least five of the *Douglas* criteria: (1) the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, (2) the employee's past disciplinary record, (3) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability, (4) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties, and (5) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others. *See id.* The board is not required to consider all twelve factors in every case; it need only consider those relevant to the individual case. *Nagel v. Department of Health and Human Services,* 707 F.2d 1384 at 1386 (Fed.Cir.1983); *Gip-*

son *v. Veterans Administration,* 682 F.2d at 1012 n. 15; *see Douglas,* 5 M.S.P.B. at 332–33. We conclude that the board did not fail to follow its own precedent in choosing the appropriate sanction for McClaskey.[2]

■ McClaskey, in his brief, stressed the agency's failure to weigh the *Douglas* factors. We conclude, however, that the relevant inquiry for us to make is whether the board applied the *Douglas* criteria, rather than whether or not the agency applied those criteria. *Accord Nagel v. Department of Health and Human Services,* 707 F.2d at 1386–87; *cf. Gipson v. Veterans Administration,* 682 F.2d at 1012 n. 15. At oral argument, McClaskey conceded that the relevant inquiry is whether the board considered those factors.

## IV

■ McClaskey finally contends that his punishment does not "promote the effi-

---

**2.** In its reaction to parts II and III of our opinion, the dissent forgets that our task is to review the Board, not its presiding officer, and that our review is extremely limited. As long as the Board considered the proper factors, we overturn its balancing of those factors only if the agency's punishment is completely disproportionate to the offense. This narrow standard is based on our recognition that management expertise resides with the agency, not with the Board or this court. Thus, just as we defer to the Board, the Board defers to the "agency's primary discretion in exercising the managerial function of maintaining employee discipline and efficiency." *Douglas v. Veterans Administration,* 5 M.S.P.B. 313, 329 (1981); *see Weiss v. United States Postal Service,* 700 F.2d 754, 758–59 (1st Cir.1983) ("Once the charges are sustained, ... efficient management is served by allowing the agency, within broad limits, to assess the severity of the penalty necessary ...."). The dissent's failure to understand this principle is clear from its statement that "[dismissal] should be reserved for the most serious of offenses or for cases in which it has been demonstrated that lesser punishment is ineffective." We are not free, however, to substitute our view of personnel management techniques for that of the agency.

Nor is it relevant that the presiding officer's report was longer or more specific than the Board's order. The Board did not need to respond in detail to every point in the officer's report because, in its view, the officer misunderstood her mission and exceeded her authority by failing to give sufficient deference to the

agency's discretion. It is clear from the record that the officer reversed the agency's decision because she considered the penalty unwise and believed that the agency could have accomplished its objectives with a more lenient penalty. Such judgments, however, are not within the discretion of the presiding officer, the Board, or this court.

Finally, in its "progressive discipline" argument, the dissent again substitutes its judgment for the Board's. Nothing in the record indicates that, if indeed the agency did have some policy of "progressive discipline," McClaskey's dismissal violated that policy. Nor did McClaskey argue such a position. The record contains no evidence of a specific "common law" of the agency on "progressive discipline," *Norfolk Shipbuilding and Drydock v. Local No. 684,* 671 F.2d 797, 799 (4th Cir.1982), or an established or published "personnel policy ... provid[ing] for progressive degrees of discipline," *American Thread Co. v. NLRB,* 631 F.2d 316, 319 n. 3 (4th Cir.1980). The specifics of such principles adopted by an employer are a matter of choice, custom, or bargaining, not judicial prescription from an empty record. At best, the government's attorney in this case, also obviously unaware of any specific policy on the part of the agency, said the agency followed "*a principle*" of progressive discipline. Unlike the dissent, we cannot claim to divine from this that McClaskey's discharge violated some specific agency policy.

ciency of the service." 5 U.S.C. § 7513. Our inquiry here is distinct from our inquiry into whether the penalty is excessive as compared to the offense. *See Weiss v. United States Postal Service,* 700 F.2d 754, 757 & n. 6 (1st Cir.1983); *Debose,* 700 F.2d at 1269; *Young v. Hampton,* 568 F.2d 1253, 1264 (7th Cir.1977). The agency need not demonstrate that a particular penalty is *required* to promote the efficiency of the service, but only that it will, in fact, accomplish that result. *See Weiss v. United States Postal Service,* 700 F.2d at 757 & n. 7. We defer to the board's resolution of this issue, provided there is substantial evidence to support its determination. *Debose,* 700 F.2d at 1269.

■ When an employee is dismissed for an offense involving deliberate deception, the required nexus between the conduct and the efficiency of the service is obvious. *See Phillips v. Bergland,* 586 F.2d 1007, 1011 (4th Cir.1978); *accord Gipson v. Veterans Administration,* 682 F.2d at 1011–12; *Book v. United States Postal Service,* 675 F.2d at 161; *Young v. Hampton,* 568 F.2d at 1257 & n. 5, 1260–61. Such is the case here. We

have recently stated that a nexus between the conduct and the efficiency of the agency may not be presumed from actions which are both off duty and not job-related. *D.E. v. Department of the Navy, MSPB,* 707 F.2d 1049, 1051–53 (9th Cir.1983) (agency failed to show that conduct of civilian naval employee who pleaded nolo contendere to charges of sexual abuse of a child required dismissal to promote the efficiency of the service). Here, McClaskey's misconduct involved his co-employees, other agency personnel, and agency property. It was, as the dissent also admits, clearly job-related. We hold that such serious on-duty misconduct raises a presumption that the required nexus has been met.

[11] Moreover, even if a more particularized inquiry were necessary in this case, the board has clearly established the need for absolute honesty in McClaskey's particular job at the agency; hence, it has provided substantial evidence that McClaskey's dismissal will promote the efficiency of the service.[3]

AFFIRMED.

---

**3.** Without citing any authority, the dissent asserts that the "efficiency of the service" issue is subject to a two-part test and that the nexus requirement refers not to "whether the particular punishment imposed will promote the efficiency of the service," but to the question "whether the efficiency of the service justifies the imposition of any discipline whatsoever for the particular offense." This assertion is clearly refuted by *D.E. v. Department of the Navy, MSPB,* 707 F.2d 1049 (9th Cir.1983), in which we stated:

An agency may remove an employee "only for such cause as will promote the efficiency of the service." An agency must make two determinations before removing an employee for off-duty misconduct: (1) that the employee actually committed the conduct; and (2) that removal will promote the efficiency of the service. *The second requirement has been framed as requiring a "nexus" between the misconduct and the efficiency of the service.* Because E. does not dispute the child molestation charge, the issue here is whether a nexus was established.

*Id.* at 1050 (emphasis added; citations and footnote omitted); *accord Sherman v. Alexander,* 684 F.2d 464, 468 (7th Cir.1982) (citing additional cases), *cert. denied,* —— U.S. ——, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983).

Thus, the nexus requirement is exactly as we have described it above. Moreover, the "efficiency" analysis is two-pronged only to the extent that we must also consider whether the employee actually committed the offense. Because McClaskey does not contest that he committed the offense, and because we have already considered the proportionality issue, the only question to be determined here is whether the penalty of dismissal will promote the efficiency of the service, or, put another way, whether there is a nexus between the misconduct and the efficiency of the service.

The dissent also misunderstands the relevance of whether the misconduct is job-related. Under *D.E. v. Department of the Navy, MSPB,* if the conduct is not job-related we may not presume that it has impaired the efficiency of the service. However, when misconduct is job-related and its effect on the efficiency of the service is obvious, as with deliberate deception, many circuits have held that the required nexus is presumed. *See Phillips v. Bergland,* 586 F.2d 1007, 1011 (4th Cir.1978); *accord Gipson v. Veterans Administration,* 682 F.2d 1004, 1011–12 (D.C.Cir.1982); *Book v. United States Postal Service,* 675 F.2d 158, 161 (8th Cir.1982) (per curiam); *Young v. Hampton,* 568 F.2d 1253, 1257, 1260–61 (7th Cir.1977). This rule is designed to relieve the Board from expending its

REINHARDT, Circuit Judge, dissenting:

When reviewing a penalty imposed by the Merit Systems Protection Board, it is our statutory responsibility to determine whether the sanction is so harsh or disproportionate as to constitute an abuse of discretion, 5 U.S.C. § 7703(c) Supp. V 1981, whether the Board failed to follow its own principles and precedents, and whether there is substantial evidence to support the conclusion that the penalty promotes the efficiency of the government agency involved, 5 U.S.C. § 7513 Supp. V 1981. By routinely deferring to the conclusory findings of the Board, the majority has, in my opinion, ignored its responsibility and affirmed the imposition of an arbitrary and irrational penalty. Moreover, it has also ignored the failure of the Board to follow its own principles, and has erred in finding substantial evidence that the penalty promotes the efficiency of the service. I therefore respectfully dissent.

I.

How the facts in a particular case appear is often dependent on how the author of an opinion chooses to characterize them. That is certainly the case here. Although the majority opinion accurately sets forth certain historical occurrences, the picture that emerges of Raymond McClaskey's conduct is far different from the view one might obtain from a more understanding or less judgmental reporting of the same events. Therefore, I will try to restate the facts in a manner which may help put the legal issues in a better perspective.

Two employees of the Bonneville Power Agency, Lapp and Rhew, unlawfully used agency purchasing documents to obtain $418.00 worth of wire for their personal use. Raymond McClaskey was not aware of and did not in any way participate in this unlawful scheme. Afterwards, the two employees, fearing discovery of their actions, asked McClaskey, a co-worker and friend, to help them replace the wire. Reluctantly, McClaskey did so, not for personal gain, but solely in order to help his friends. He picked up the replacement wire for them, used his own check for payment, and put the wire in the agency bins. Later, when his friends told him that his efforts were to no avail—that the investigators already knew of their unlawful acts—McClaskey removed the replacement wire he had put in the bins and restored the status quo ante. His attempt to assist his friends ended in total failure, and the government was in no way prevented from carrying out its investigation.

McClaskey was perfectly candid and wholly cooperative with the investigators. Only his insistence that he had committed a wrongful act permitted the Board to arrive at a finding of guilty. As the Board itself concluded, McClaskey's conduct did "not quite constitute 'knowingly participating in a plan to prevent Government investigators from learning the truth about the unauthorized acquisition and use of wire paid for by' the agency, as charged in the removal notice. Nothing in the record indicates how [McClaskey's] conduct could 'prevent Government investigators from learning the truth' about this matter." Opinion and Order of MSPB, p. 3.

McClaskey was a model employee throughout his fourteen continuous years of service for the Bonneville Power Administration. At the extensive hearing conducted by the Board's Presiding Official, "[a]n impressive number of [McClaskey's] supervisors and co-workers testified that

resources on a particularized inquiry into the nexus between the misconduct and the efficiency of the service when that relationship is obvious.

The wisdom of this approach is demonstrated by this case. The dissent claims that the presiding officer cited evidence suggesting the lack of a nexus. This "evidence" consists of responses by agency employees to hypothetical questions as to whether McClaskey's involvement in the cover-up of a crime would change their view of him. First, it is inefficient to require the agency to engage in such inquiries every time it decides to discharge an employee. Such extensive factfinding should be reserved for cases in which the employee's conduct is off-duty or the effect on the agency is unclear. Second, that some employees condone a fellow employee's misconduct should not prevent the agency from discharging the wrongdoer.

[McClaskey] was conscientious, dependable, loyal and well-respected by his fellow employees," "an exceptionally competent electrician who took pride in his job and ability to be a good craftsman," and a person of "honesty, integrity and superior performance on the job." Decision of Presiding Official, p. 5. The Board does not in any way dispute these characterizations of McClaskey as a worker and as a person. Rather, it argues that, in spite of this uncontradicted testimony, McClaskey should be dismissed for the single mistake he committed during his fourteen years as a government employee.

In light of McClaskey's exemplary work record and the absence of any motivation of personal gain, the Board and the majority offer only one justification for his dismissal: the need for the agency to be able to trust employees who have been delegated the authority to make purchases. Opinion and Order of MSPB, p. 3; Majority Opinion, *supra,* at pp. 586–587. This reason, however, is totally unpersuasive and ignores the specific facts of McClaskey's case. At a hearing before the Board's Presiding Official, McClaskey's supervisors "testified that [he] was the best electrician the Agency had." This testimony also convinced the Presiding Official that "learning the facts underlying the charge did not change [the supervisors'] opinion of [McClaskey] as an excellent employee at all." Decision of· Presiding Official, p. 5. She concluded that McClaskey's "conduct appears to have had little, if any, effect on the confidence of [his] supervisors in his ability to perform the duties of his job." *Id.* In short, on the basis of the evidence in the record, the Presiding Official found no reason to believe that McClaskey would not be a trustworthy employee in the future.

The Board's Presiding Official decided in a lengthy, thorough and well-reasoned opinion that McClaskey should not be dismissed and that a 30-day suspension would constitute appropriate punishment. The cursory

Board opinion reinstating McClaskey's dismissal stands in sharp contrast to the carefully reasoned judgment of the Presiding Official. Indeed, the generalized and conclusory findings of the Board suggest that McClaskey's case was not properly considered on its own merits. Rather than examining the particular facts of McClaskey's situation, the Board's brief four-page· decision offers only conclusory statements that are unsupported by the evidence presented to the Presiding Official. And the majority opinion defers to these conclusions of the Board, once again without any attempt to refute the very particularized findings of the Presiding Official.

## II.

It is our duty to decide whether the punishment imposed is so disproportionate to the offense as to constitute an abuse of discretion. 5 U.S.C. § 7703(c) Supp. V 1976.[1] There is no doubt that such a judgment is sometimes difficult to make. Nonetheless, as the Supreme Court has very recently reaffirmed, decisions regarding the proportionality of punishment, "although troubling, are not unique to this area. The courts are constantly called upon to draw similar lines in a variety of contexts." *Solem v. Helm,* —— U.S. ——, 103 S.Ct. 3001, 3012, 77 L.Ed.2d 637 (1983). Thus, in the context of criminal sentencing—an area presenting much more complex situations than the one involved here—the Supreme Court has insisted that there are "objective" and "generally accepted criteria for comparing the severity of different crimes on a broad scale." *Id.* 103 S.Ct. at 3011.

The Board and the majority have failed to apply any such criteria to McClaskey's case or to set forth any criteria to be considered. Nor is there any reasoned discussion regarding the comparative seriousness of the offense. Nevertheless, the principal factors to be considered emerge clearly from the record. The Presiding Official

1. We have found discharge to be an excessive punishment on a number of occasions. *See, e.g., Francisco v. Campbell,* 625 F.2d 266, 269–70 (9th Cir.1980); *Albert v. Chafee,* 571 F.2d 1063, 1068 (9th Cir.1977). So have other courts. *See, e.g., Power v. United States,* 531 F.2d 505, 509, 209 Ct.Cl. 126 (1976).

found, on the basis of undisputed testimony, that McClaskey was a model employee who had no disciplinary record and that his role in the affair was a limited one. No one questions the fact that McClaskey was acting to help his desperate friends, with no thought of personal gain. Moreover, all agree that McClaskey was attempting to replace government property, not steal it, and the Board itself found that McClaskey's behavior could not possibly have served to "cover-up" the incident. Finally, the Presiding Officer emphasized that McClaskey's immediate supervisors and co-workers expressed their continuing trust and confidence in him even after being told of his behavior.

Despite the thorough findings of the Presiding Official, the Board and the majority have decided that McClaskey should receive the same punishment as the two principals who defrauded the government for personal gain—even though dismissal from government service constitutes the harshest sanction possible. In this era of record high unemployment and scarce employment opportunities, dismissal for wrongful conduct may be equivalent to an economic death sentence for the employee. It is not a penalty to be lightly ordered or routinely upheld. It should be reserved for the most serious of offenses or for cases in which it has been demonstrated that lesser punishment is ineffective. Here, the majority has endorsed the use of the ultimate sanction, even though McClaskey's lengthy work record is exemplary and his role in the affair was both minimal and secondary. I believe it errs in doing so, and that we should perform our statutory duty and find that McClaskey's punishment is so disproportionate to his offense as to constitute an abuse of discretion.

## III.

There is another reason why I believe reversal is required. Neither the Board nor the majority mentions a well-recognized principle of employer-employee relations

that is, in my view, dispositive of this case—progressive discipline. At oral argument, counsel for the government grudgingly conceded that the Board recognizes the applicability of that principle "in general." Thus, the government is bound to follow the rule, if applicable to the facts of a particular case.

Progressive discipline has long been a hallmark of enlightened employee relations. The purpose of "progressive discipline" is to make "employees more secure in their jobs." *National Labor Relations Board v. General Warehouse Corp.,* 643 F.2d 965, 970 n. 18 (3d Cir.1981) (citing arbitrator's decision). To achieve this goal, progressive discipline requires that "progressively more severe penalties for successive violations of" an employer's rules be administered. *Norfolk Shipbuilding & Drydock Corp. v. Local No. 684,* 671 F.2d 797, 799 (4th Cir.1982); *see also National Labor Relations Board v. New York University Medical Center,* 702 F.2d 284, 288 (2d Cir.1983). Discharge from employment is used only as a "last resort." *American Thread Co. v. National Labor Relations Board,* 631 F.2d 316, 319 n. 3 (4th Cir.1980).

I do not suggest that a first offense can never be sufficiently egregious to warrant dismissal. However, where a lesser punishment can adequately serve the governmental purpose, the ultimate penalty should not be imposed the first time an employee errs. Despite its acknowledged commitment to the principle of progressive discipline, the Board, in ordering McClaskey's dismissal, ignored the principle completely. Rather than using other possible sanctions such as suspension—which the Presiding Official found would be sufficient to deter future misconduct, the government fired, as its "first resort," an employee with an unblemished work record because of a tangential *post hoc* involvement in a fraudulent scheme perpetrated by others. The government's failure to follow its own rules is, to me, sufficient reason in itself to warrant reversal.[2]

---

**2.** The majority states in its "progressive discipline" argument that I propose to substitute

my judgment for that of the Board's. That is not the case. The Board failed to make any

## IV.

In my view, the majority has also erred in finding that there is substantial evidence to support the Board's conclusion that the penalty of dismissal will promote the efficiency of the agency. Majority Opinion, *supra,* at pp. 588–589. To begin with, the majority opinion confuses the two distinct inquiries necessitated by the section 7513 efficiency requirement. The agency must first determine whether the efficiency of the service justifies the imposition of any discipline whatsoever for the particular offense. Most courts have referred to this as the nexus requirement. Second, the agency must decide whether the particular punishment imposed will promote the efficiency of the service. Despite the fact that both of these requirements must be met, the majority's discussion is devoted almost exclusively to the question whether the misconduct is job-related and thus whether the imposition of any discipline whatsoever is appropriate. *See* Majority Opinion, at pp. 586–587.

This discussion does not, however, answer the question whether the *dismissal* of McClaskey promotes the efficiency of the service. On the latter point, the majority says only that because the Board established the fact that McClaskey's job is one in which honesty is required the substantial evidence standard has been met. I do not agree.[3]

judgment. It did not even mention "progressive discipline." It is difficult to determine why the Board did not consider this principle in reaching its decision. Whenever an employee contends that the degree of discipline is not warranted, an agency must consider that contention and determine, *inter alia,* whether, under its own rules and principles, the argument is correct. If the agency follows the well-established progressive discipline principle, then that is one of the matters the agency must consider.

The majority suggests that the Board followed "a principle" of progressive discipline, but not "the principle." Such a distinction seems to me a most unpersuasive way of seeking to avoid the fact that the Board failed to apply *whatever principle* of progressive discipline was applicable. The majority's suggestion that the government attorney was "obviously unaware" of the agency's specific policy is similarly unpersuasive. To the contrary, it seems to me that the government attorney was simply attempting to be evasive. The colloquy on this point is set forth below:

JUDGE REINHARDT: Does the Merits Board recognize the general principle that is utilized in employment relations that progressive discipline is normally the appropriate tool except in exceptional circumstances?

GOVERNMENT ATTORNEY: The Merit Systems Protection Board recognizes that the primary discretion for choice of the penalty lies with the agency.

Q: That's a different question. The question was "Do they recognize the general principle of progressive discipline when possible and except in extreme circumstances?"

A: *They recognize a principle of progressive discipline.* But that does not mean that one, for an action such as this, has to start with a reprimand and the next time a three day suspension, and the next time a five day, and the next time a 30 day.

Q: I know it doesn't mean that. But they do recognize this principle. . . .

A: I should also point out, your Honors, (INTERRUPTS) (moves on to another point). (Emphasis added).

If the majority disagrees with the decisional law that describes what progressive discipline is, it has not explained why.

The majority's second line of defense is that we should not credit the representation even if made—that a government attorney's statements at oral argument are not worthy of the treatment I afford them. I disagree. When a government attorney, in response to a question, advises us as to the position or policy of the government, I believe we should treat that representation seriously, whether grudgingly made or not. Government attorneys have a particular public responsibility to fulfill when asked to advise us of the relevant facts and law, or to inform us concerning a governmental practice, procedure or policy. If erroneous statements are made at oral argument, they can and should be corrected later. In this case, there is no reason to believe that the government attorney's response was incorrect. Progressive discipline is a well-recognized and long established principle of labor-management relations. It would be surprising if the government did not follow it.

**3.** The majority cites our decision in *D.E. v. Department of the Navy, MSPB,* 707 F.2d 1049 (9th Cir.1983), to support its assertion that a particular punishment can legally be imposed even though it does not promote—and may, as in this case, actually hinder—the efficiency of the service. *See Majority Opinion, supra* at note 3. Yet *D.E. v. Department of Navy, MSPB* did not involve a challenge to the appropriateness of a particular penalty or the relationship of a penalty to the agency's efficiency. On the contrary, the issue in *D.E.* was whether off-duty misconduct justified the imposition of

**594**

The Board made no specific findings on the issue of whether McClaskey's dismissal would promote the efficiency of the service. Instead, the Board made several generalized, conclusory statements in explanation of its determination that discharge was not an unreasonable penalty. These statements are wholly unpersuasive and find little, if any, support in the record. Neither the Board nor the majority made any serious attempt to examine the appropriateness of the penalty imposed upon McClaskey in light of the section 7513 efficiency requirement. Only the Presiding Official has undertaken such a particularized inquiry.

In view of the testimony presented, I agree with the Presiding Official's conclusion that "the efficiency of the Agency's operations may well be enhanced by the imposition of" a 30-day suspension rather

than dismissal. This is in part because "[t]he record contains evidence that the morale of many Agency employees was very low due to the Agency's decision to remove" McClaskey. Decision of Presiding Official, p. 6. This finding is not even mentioned by either the Board or the majority. In fact, a comparison between the detailed, particularized findings of the Presiding Official and the cursory, generalized conclusions of the Board leaves little doubt that the Board's decision that the efficiency of the service will be promoted by McClaskey's discharge is unsupported by substantial evidence.[4]

I would reverse the decision of the Merit Systems Protection Board and reinstate the 30-day suspension imposed by the Presiding Official.[5]

any punishment whatsoever. The question of whether the particular punishment imposed actually promoted the efficiency of the service was not even before the court. *D.E.* therefore does not support the majority's position.

The majority misunderstands my position, just as it misunderstands our decision in *D.E. See Majority Opinion, supra* at note 3. I agree completely with the conclusion that McClaskey's conduct was job-related and thus justifies the imposition of some punishment. This conclusion seems to me to be non-controversial. It was not put in issue by the parties and is not before us. Unfortunately, however, the majority's analysis is devoted almost exclusively to this question of whether the conduct is job-related and so deserves to be punished in some way. There is much dictum as to when the nexus between the job and the conduct may be presumed. What the majority largely ignores is the question of whether the particular punishment imposed promotes the efficiency of the service. It is on this crucial point that we disagree.

**4.** The Presiding Official also made uncontradicted findings on the question of deterring dishonest conduct *in this particular case.* After evaluating "the evidence of [McClaskey's] character, as shown by his testimony and that of his friends, co-workers and supervisors," the Presiding Official decided "that the penalty of a thirty day suspension would adequately and effectively deter" McClaskey from such conduct in the future. Decision of Presiding Official, p. 6. Moreover, the dismissal sanctions imposed on the two workers who actually attempted to defraud the government should serve to deter other employees.

**5.** McClaskey's immaculate employment record, the continuing confidence of his supervisors, and the extenuating circumstances surrounding his behavior all combine to distinguish his case from the precedents cited by the majority. *See* Majority Opinion, *supra*, at p. 587. In addition, the majority's brief descriptions of the precedents unduly minimize the nature of the misconduct involved in each case. *Book v. United States*, 675 F.2d 158 (8th Cir.1982) (*per curiam*), for example, involved misconduct by a postmaster—a supervisor who "occupied a position of trust," *id.* at 161, and whom we rightly expect to set an example for his workers. The $22.00 figure mentioned in the majority's description was supplied by Postmaster Book himself; the court actually found that the "dollar value of the tools and supplies is not clearly set out in the record." *Id.* at 160. Indeed, the postmaster's thefts hardly appear to be isolated or minimal. Among various other items found in his home, the postmaster admitted taking "four sockets, one socket adapter, three rolls of electricians tape, a battery terminal puller, a pair of wire cutters, two screwdrivers, a file, a can of antiseize, a box end wrench, an adjustible wrench, and a rotary wire brush." *Id.* at 160 n. 2.

Similarly, *Brewer v. United States*, 647 F.2d 1093, 227 Ct.Cl. 276 (1981), involved more than minor misconduct. There, a Superintendent of Postal Operations made false entries on the time card of a clerk "who was designated timekeeper ... at the post office." *Id.* at 1095. The Court of Claims justified the sanction of dismissal by emphasizing that Brewer "had a position requiring a high degree of honesty and integrity," and that the Postal Service had a right to expect that Brewer would set a good

example—especially when certifying the time card of the person who was responsible for certifying all of the other employees' time cards. *Id.* at 1098.

Finally, *Alsbury v. United States Postal Service,* 530 F.2d 852 (9th Cir.1976), involved thefts for which Alsbury was criminally prosecuted and for which imprisonment could have resulted. *Id.* at 853, 855. Moreover, Alsbury did not even argue on appeal that his punishment was disproportionate to the offense committed. Thus, the issue of the propriety of the punishment was not considered by the court.

In sum, the precedents cited by the majority are easily distinguishable from McClaskey's case. These precedents do not even begin to justify the harsh penalty imposed here.