**Theodore R. THOMPSON, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**Civ. A. No. 83–0192–D.**

United States District Court, W.D. Virginia, Danville Division.

Sept. 10, 1984.

**630**

Louis P. McFadden, Jr., Meade, Tate & Meade, Danville, Va., for plaintiff.

Jennie L. Montgomery, Asst. U.S. Atty., Roanoke, Va., Mariann E. Schick, Labor Law Division, U.S. Postal Service, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

KISER, District Judge.

In this action Plaintiff, Theodore R. Thompson, a former employee of the United States Postal Service (the Service), seeks a review of a decision of the Merit Systems Protection Board (MSPB) upholding his removal from government Service. Because the Plaintiff has also alleged discrimination as a basis for his termination of employment, this is what has been considered by

the courts as a "mixed case" and is, therefore, properly before this Court. 5 U.S.C. § 7703(b)(2); *see Hayes v. United States Government Printing Office*, 684 F.2d 137 (D.C.Cir.1982). Trial was held on May 21 and 22, 1984. At the close of the Plaintiff's case, the Court granted the Defendant's motion to dismiss Plaintiff's complaint of handicap discrimination. The parties have submitted final argument in the case, and thus it is now ripe for disposition.

The facts in the case are briefly as follows. The Plaintiff had been an employee of the Service since 1970 before he was removed on October 4, 1982. The Plaintiff was charged with theft of mail matter. The removal action was taken as a result of an investigation by the agency's postal inspectors, who were summoned to the Martinsville Post Office to investigate whether the Plaintiff was malingering an injury. At trial, Inspector Posey indicated there was no evidence to show that Plaintiff was in fact malingering an injury.

However, while watching the Plaintiff, the Postal Inspectors observed the Plaintiff taking various items from the mails, including cigarettes and magazines. At the time the Plaintiff was being observed, he was working as a "throwback" clerk. Although the Plaintiff contends that he was not familiar with this position, the Plaintiff's past duties as a carrier, I feel, were of the nature that he would be able to perform as such a clerk. At this point, the Inspectors began to "test" the Plaintiff with items placed in the mail system over a period of approximately two weeks. Fifteen test items were placed in the mail system by Postmaster Abernathy and the Postal Inspectors. On September 15, 1982, the Plaintiff was observed opening a third class envelope which had no indication of return address and taking two Kennedy half dollars which had been marked by the Inspectors.

As the Plaintiff was leaving work on September 15, he was stopped by the Inspectors and admitted taking certain items for his personal use. On September 23, 1982, he received a letter from G.E. Han-

kins, Superintendent of Postal Operations at the Martinsville Post Office, informing the Plaintiff of the Service's proposal to remove him from the Postal Service. The reason for this proposed action was that he was charged with theft of mail matter. The Plaintiff was removed from his position effective October 4, 1982.

### I.

This Court must sit as an appellate body to review the decision of the MSPB to determine if, within the confines of the standards of review set forth at 5 U.S.C. § 7703(c), the decision is lawful. It is well settled that the decision of the agency must be sustained unless the Court shall determine that the agency's actions are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed, or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

Judicial review of MSPB decisions is "very narrow" and is to be based exclusively on the administrative record. *See, e.g. Romero v. Department of the Army,* 708 F.2d 1561, 1563 (10th Cir.1983); *Doe v. Hampton,* 566 F.2d 265, 272 (D.C.Cir.1977). In this case, the Plaintiff challenges the decision as follows: (1) the action taken against the Plaintiff was not shown to have promoted the efficiency of the Service; (2) the penalty was inappropriate as the MSPB failed to consider relevant factors surrounding the incident; (3) the MSPB failed to properly consider the disparate treatment given Plaintiff as opposed to other employees; and (4) the MSPB acted unlawfully in finding that Plaintiff's claimed defense of entrapment failed.

### A.

The Plaintiff alleges that the MSPB failed to find and articulate properly that there was a nexus between the Plaintiff's acts and the promotion of the "effi-

ciency of the Service." An employee may be removed by an agency only for such cause as will promote the efficiency of the Service. *See* 5 U.S.C. § 7513. This statute requires simply that the Service have a rational basis for discharging the employee. *Risner v. United States Dept. of Transportation,* 677 F.2d 36 (8th Cir.1982). To establish the nexus between the Plaintiff's misconduct and the efficiency of the Service, the agency must show that "the misconduct adversely affects the effective performance of the employee or his co-employees." *Bonet v. United States Postal Service,* 712 F.2d 213, 214–15 (5th Cir. 1983). Further, in the Fourth Circuit it has been held that:

> There is, of course, some conduct with respect to which the 'nexus between the dismissed employee's activities and the efficiency of the Service' is 'obvious on the face of the facts.' Typical of conduct which carries on its face prejudice to the Service ... are falsification of work records or expense accounts, theft of government property, assault on one's supervisor at work, and insubordination. All of these are without question related to the faithful and loyal performance of his duties by an employee and are work-related. *Phillips v. Bergland,* 586 F.2d 1007, 1011 (4th Cir.1978). (citations omitted).

In this case, the Plaintiff admitted taking certain items from the mails for his own personal gain, clearly a work-related incident which affects the Plaintiff's performance. This misconduct was the cause of his termination. In fact, the Plaintiff pled guilty to a criminal offense related to this incident.[1]

The Postal Service is charged with ensuring that mail is properly delivered. The public has placed its trust in this agency and has every right to expect that letters and packages will reach their proper destinations. Although the matters taken in

---

1. The record reveals that the Plaintiff has been found guilty of obstruction of the mail as a result of this act.

**632**

this case may have been "test" items, it was clear that substantial evidence supports the fact that the Plaintiff breached his fiduciary duty on more than one occasion and this breach carries on its face prejudice to the service.

## B.

 The Plaintiff next challenges whether the penalty of removal amounts to an abuse of discretion based on the circumstances in this case. The Plaintiff submits that the agency's failure to consider the nature and seriousness of the offense and whether the taking of certain mail matter was common practice renders the affirmation of the agency's penalty arbitrary and capricious. It is well established that under civil service law the penalty for employee misconduct is left to the sound discretion of the agency. The Court will defer to the agency's choice of penalty unless its severity appears "totally unwarranted" in light of relevant factors. *See, e.g., Miguel v. Department of the Army,* 727 F.2d 1081 (Fed.Cir.1984); *Brewer v. United States Postal Service,* 647 F.2d 1093, 1098, 227 Ct.Cl. 276 (1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982). In two situations courts will not uphold the punishment imposed by the agency. The first test for an invalid penalty is whether or not the sanction exceeds the range of permissible punishment specified by statute or regulation. Under the second test, courts disapprove discipline which is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion by the agency. *See, e.g. Power v. United States,* 531 F.2d 505, 209 Ct.Cl. 126 (1976).

 It is undisputed that removal is a sanction in the range of permissible punishment in this case. However, it is the Plaintiff's contention that the MSPB erred in upholding the Plaintiff's removal from service when the agency failed to consider relevant factors unique to this case including the contention that the taking of undeliverable third-class mail was common practice at the Martinsville Post Office. How-

ever, under the facts presented to the MSPB, I believe that the Plaintiff's removal should be upheld. Two of the Plaintiff's witnesses had left the service at Martinsville in 1975 and 1980, and thus were not in a position to know what the common practice was at the Martinsville Post Office. At best, the evidence as to this point is contradictory. Although under the facts of this case, I may have imposed another penalty, I cannot hold that the penalty is "totally unwarranted" in this case.

## C.

 The Plaintiff also contends that he was treated differently than other employees and such disparate treatment renders the penalty of removal an abuse of discretion. However, the Plaintiff failed to demonstrate that any other employee had taken mail matter for his own personal use, as did the Plaintiff. The Plaintiff did show that a white employee, Glenn Holland, had "trashed" certain deliverable mail which was recovered by other employees. Although I find such behavior intolerable, I also find it distinguishable from the actions of the Plaintiff who converted mail to his own use.

## D.

Finally, I concur with the decision of the MSPB that the Plaintiff's entrapment argument must fail. In this case, the Plaintiff was not induced to remove the items—he took them of his own free will.

Therefore, in conclusion, the decision of the MSPB affirming the removal of Theodore R. Thompson is affirmed.

## II.

The Plaintiff's second claim is that he was discriminated against on the basis of his race in violation of § 717(c) of the Civil Rights Act of 1964 [42 U.S.C. § 2000e–16(c)]. In order to prevail in this claim, Thompson must prove that the Defendant intentionally discriminated against him. *Texas Department of Community Affairs*

*v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

In light of the historic difficulties faced by plaintiffs trying to overcome employer's assertions of legitimate business purposes for their actions, the Supreme Court has stated that proof of a *prima facie* case of discrimination raises a rebuttal presumption in the plaintiff's favor. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To create this presumption, Thompson must prove that (1) he belongs to a racial minority, (2) he was discharged or demoted, (3) at the time of the discharge or demotion he was performing his job at a level that met his employer's legitimate expectations, and (4) following his discharge or demotion, he was replaced by someone of comparable qualifications outside the protected class. *Burdine, supra*, 450 U.S. at 254, 101 S.Ct. at 1094.

The Defendant articulated a non-discriminatory reasons for Plaintiff's termination—his theft of mail matter. The Supreme Court has recently noted that when the defendant offers evidence of a reason for the plaintiff's dismissal, the *McDonnell-Burdine* presumption "drops from the case" and "the factual inquiry proceeds to a new level of specificity." *United States Postal Service Board v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). At this point in the proceedings, therefore, the question is whether the Plaintiff has proven intentional discrimination by showing that a discriminatory reason more likely motivated the employer or by showing that the employer's proffered explanation is unworthy of credence, *Burdine, supra*, 450 U.S., at 256, 101 S.Ct. at 1095, or a mere "pretext".

No credible evidence was presented to the Court which directly proves that the Plaintiff's discharge was motivated by racial discrimination. Some of Plaintiff's own witnesses testified that there was no racial discrimination at the Martinsville Post Office. While there was some testimony to the contrary, I did not find those witnesses as credible because they were also having difficulties with their superiors over job performance. Indeed, the Plaintiff has not tried to establish direct proof of intentional discrimination. Instead, he has sought to prove that the asserted reason for his discharge was a mere pretext, and that different treatment was given to white employees who committed equally serious offenses. The evidence presented does not support either of these contentions.

### A.

Thompson contends that the failure of the Postal Service to consider various mitigating factors and lesser penalties is proof that the articulated reason for Thompson's discharge was pretextual. The mitigating factors cited include the Plaintiff's inexperience at this particular job, the widespread practice of removing third rate undeliverable mail for personal use, and the reasonable dilemma encountered by the Plaintiff faced with money in mail that would normally be thrown out. These factors are relevant to my review of the MSPB decision, as explained above. But the fact remains that the offense committed by the Plaintiff is an act which violates federal criminal statutes, and Postal Service regulations provide for removal as a penalty for this offense.

The Plaintiff cites several cases for the proposition that the Postal Service's failure to consider less restrictive penalties is proof that the articulated reason was pretextual. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), does not support this proposition. That case simply held that employees of one color cannot be discharged for one offense while retaining employees of another color found guilty of the same offense. *Id.* at 284, 96 S.Ct. at 2580. The applicability of *McDonald* to Thompson's second argument will be discussed below. The other case cited by Plaintiff, *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir.1971), is easily distinguishable. *Robinson* involved a seniority system that had a discriminatory impact.

The Fourth Circuit Court of Appeals held that:

> The test is whether there exists an overriding legitimate business purpose such that the practice is necessary to the safe and efficient operation of the business. Thus, the business purpose must be sufficiently compelling to override any racial impact; the challenged practice must effectively carry out the business purpose it is alleged to serve; and there must be available no acceptable alternative policies or practices which would better accomplish the business purpose advanced, or accomplish it equally well with a lesser differential racial impact. *Id.* at 798.

Applying this test to the Postal Service policy that makes theft a removal offense, I find that this policy does not have a differential racial impact when applied uniformly or when applied to the circumstances of this case. The Postal Service has a strong interest in protecting items entrusted to it by its customers. A violation of this fiduciary duty by an agent or employee of the Postal Service is treated harshly, and theft is considered among the most serious offenses. This policy is not unreasonable on its face, and the reasonability of a particular application of this policy, based upon mitigating factors, is more appropriately challenged through the MSPB.

### B.

Plaintiff asserts that the Postal Service's removal policy is *not* applied uniformly. He contends that the harsher treatment he received, when compared with the treatment given a similarly situated white employee, is proof that the agency's reasons are pretextual and their actions based upon prohibited discriminatory factors.

■ As a matter of law, this contention is sound. Proof of disparate treatment between a white and a black employee who are similarly situated can be sufficient to establish pretext. *McDonald, supra,* 427 U.S. at 283–84, 96 S.Ct. at 2580–81. But the Plaintiff has not established the facts necessary to bring his case within the *McDonald* rule. There is no evidence that any other postal employee, black or white, has received different treatment when discovered by postal supervisors removing items from the mail for their personal use. Thompson's argument that everyone else was doing the same thing is of no avail. He was the one who was caught, and he was punished accordingly. The fact that other employees were not caught is not a legitimate defense, and it cannot lead to the conclusion that his punishment was pretextual.

■ The Plaintiff tries to compare his punishment to that of a white employee, Glenn Holland, who repeatedly received suspensions for insubordination and obstruction of mail, which are potentially removable offenses. The record shows that the lower penalties were issued under the MSPB's practice of "progressive discipline". Holland, frustrated over his receipt of additional work shortly before he was scheduled to leave, apparently "trashed" some mail in the sight of other employees.

Postal authorities concluded that Holland's act was committed in the heat of passion, and that no permanent damage was done. The Postal Service argues that Thompson's deliberate act of opening mail and stealing the money found inside is not only distinguishable, but goes to the heart of the Postal System's fiduciary duty to its customers.

I agree with the Defendant that the offenses and respective punishments of these two employees are significantly different, and that the *McDonald* presumption is not applicable to this case. While an employer might act reasonably in firing or retaining an employee for either insubordination or theft, it seems obvious that the employee who commits theft is more likely to be fired. Insubordination may interfere with the workings of the business, but theft, especially from a customer, affects the basic trustworthiness of the employee and his ability to deal honestly with the valued items of customers. The disparate treatment afforded these two employees does not warrant an inference that Thompson's discharge was discriminatorily motivated.

In conclusion, I must dismiss the Plaintiff's claim of racial discrimination.

An appropriate order will issue.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.