John A. DIAZ, Plaintiff,

v.

UNITED STATES POSTAL SERVICE, and Preston R. Tisch, Postmaster General of the United States, Defendant.

Civ. No. CV–F–84–407–MDC.

United States District Court, E.D. California.

March 23, 1987.

Nicholas F. Reyes, Fresno, Cal., for plaintiff.

Mark St. Angelo, Asst. U.S. Atty., Fresno, Cal., John H. Arbuckle, Regional Labor Counsel, Office of Labor Law, San Bruno, Cal., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CROCKER, District Judge.

The above matter was tried before Senior U.S. District Judge M.D. Crocker on January 27 and 28, 1987. At the conclusion of the trial, Judge Crocker issued a bench decision dismissing plaintiff's complaint, and setting forth his grounds for the dismissal.

Pursuant to the Court's request at the end of the trial, defendants submit the following findings of fact and conclusions of law:

*Findings of Fact:*

1. Plaintiff was discharged by defendant U.S. Postal Service, herein called the Postal Service, on July 5, 1983. Plaintiff had been employed as a city letter carrier at the Town Center Station of the Visalia, California Post Office from 1970 until the date of his discharge.

2. Plaintiff was issued a notice of proposed removal, dated June 1, 1983, by his immediate supervisor, Marjorie J. Krend. The notice set forth two charges, falsification of a medical certification, and unsatisfactory attendance.

3. The first charge in the notice alleged that plaintiff was on restricted sick leave, and accordingly, was required to submit a medical certificate from a physician to justify claims for sick leave. It alleged further that on May 24, 1983 plaintiff submitted such a statement from Dr. Sam Katano to cover sick leave for Monday, May 23, stating that plaintiff could return to duty on May 24. As the 4, in 24 appeared to be altered, the charge asserted that an investigation was undertaken with Dr. Katano, who stated that he had written May 22, and not May 24, as the return to duty date. Thus, the notice charged plaintiff with submitting a falsified medical statement, and absence without leave (AWOL) for May 23, 1983.

4. The charge of unsatisfactory attendance alleged that plaintiff had used sick leave on 12 separate occasions, for a total of 235 hours, in 1982; and on 4 occasions, for a total of 56.33 hours in 1983. It noted that 14 of those 16 absences occurred in conjunction with days off or holidays.

5. The notice of charges described nine aggravating factors that were considered in proposing the discharge action, including several which placed plaintiff on notice that his use of sick leave was excessive and could lead to discipline.

6. Plaintiff responded to the notice of charges by claiming that it was Dr. Katano who had changed the date on the medical certificate submitted on May 24, 1983. Based on further investigation with Dr. Katano, the Visalia Post Office did not credit plaintiff's claim.

7. In a letter of decision dated June 17, 1983 issued by Visalia Postmaster J. Frank Pineda, it was concluded that the charges set forth in the June 1 notice of charges were fully supported by the evidence and warranted plaintiff's removal, effective July 5, 1983.

8. Plaintiff appealed his discharge to the Merit Systems Protection Board (MSPB), San Francisco Regional Office. A hearing was held in Fresno, California on October 18, 1983 before MSPB Presiding Official Lu Nell Anderson, who issued her decision on January 31, 1984, sustaining the discharge.

9. The MSPB decision indicated that at the hearing the plaintiff testified that Dr. Katano originally wrote May 23 as the return to duty date, and that upon plaintiff's request, Dr. Katano had changed the date to May 24. Although Dr. Katano was not subpoenaed by the plaintiff or Postal

Service to testify before the MSPB, the Postal Service submitted a sworn statement from Dr. Katano stating that he did not alter the medical certificate. The Presiding Official concluded that the medical certificate had been altered, but not by Dr. Katano. She noted that Dr. Katano did not make his fours as appeared on the altered certificate but that the plaintiff did make his fours in that manner. Further, she concluded that the altered four was in a different colored ink than the other writing. Also, she noted that plaintiff offered no evidence or reasons why Dr. Katano would be untruthful. Thus, she attributed the falsification to plaintiff and sustained the first charge against him.

10. As to the second charge, the Presiding Official's decision concluded that plaintiff had had only one day of unsatisfactory attendance, that being May 23, 1983, the day of AWOL resulting from the falsified medical certificate. She concluded that because all other sick leave used by plaintiff in 1982 and 1983 had been approved by the Visalia Post Office, such approved sick leave could not be used to support a removal action. She cited *Webb v. U.S. Postal Service*, 9 MSPB 749, 10 M.S.P.R. 536 (1982), as the authority for that conclusion. Nevertheless, the decision upheld the charge of unsatisfactory attendance based on the one day of AWOL.

11. The MSPB decision of the Presiding Official held that there was a clear "nexus" between the proven misconduct an the efficiency of the Service. It stated that such a falsification was indicative of an employees reliability, veracity, trustworthiness and ethical conduct. Further, it held that an agency has a right to have employees in attendance absent a valid excuse. Thus, it concluded that plaintiff's falsification and deficient attendance were serious offenses and his removal did not exceed the limits of reasonableness.

12. The MSPB decision noted that in plaintiff's appeal he had alleged that his discharge was discriminatory in violation of Title VII of the Civil Rights Act. It noted further that he submitted no evidence at the MSPB hearing to support those contentions.

13. In conclusion, the MSPB decision held that the charges against plaintiff were sustained by a preponderance of the evidence, and a nexus existed between the plaintiffs conduct and the efficiency of the Service. Therefore, the removal action was affirmed.

14. Plaintiff appealed the Presiding Official's decision by filing a petition for review with the MSPB, Washington, D.C., which issued an Order dated July 10, 1984, denying said petition on the grounds that it did not meet the criteria for review set forth at 5 C.F.R. Section 1201.115.

15. Plaintiff filed his complaint in this matter with this Court on August 14, 1984, and an amended complaint on May 28, 1985. The amended complaint sought judicial review of the MSPB decisions concerning the merits of his discharge, and a trial *de novo* concerning the allegations in the complaint that plaintiff was discharged because of a physical handicap in violation of the Rehabilitation Act of 1973, as amended 29 U.S.C. § 701 *et seq.*

16. Defendants filed a motion on June 17, 1985 to dismiss the amended complaint on the grounds that plaintiff had failed to exhaust his administrative remedies as to his physical handicap allegation in the amended court complaint, and on the further grounds that the MSPB decision did not indicate any such claim had been filed with it. In an Order filed on January 17, 1986, the Court dismissed the motion on the ground that the administrative record contained multiple references to plaintiffs allegation that he frequently used sick leave because of physical handicap in the form of a disabling back injury. Thus, the Court concluded that even though the Presiding Official did not specifically address the handicap issue, there was evidence before her from which inferences of discrimination could be drawn, but that she refused to draw them.

17. The trial of this case took place before this Court in January 27 and 28, 1987. Plaintiff testified in his own behalf in an effort to prove that his discharge was

based on his absences caused by his back problems. The defendants witnesses were plaintiff's supervisor, Mrs. Krend, and Visalia Postmaster Pineda. Neither party chose to call Dr. Katano as a witness, even though plaintiff had obtained approval of the Court to have him testify. The MSPB Administrative Record was received in evidence at the trial.

18. Plaintiff testified that while serving in the U.S. Army during the Vietnam War in 1969, he suffered a lumbosacral strain of his back. Record evidence established that at the time of his discharge in 1969 plaintiff was awarded a $23.00 per month benefit payment by the Veterans Administration based on a service connected back strain that was found to constitute a 10% disability. Plaintiff had received monthly benefit payments from the Veterans Administration continuously from 1969 to the date of his testimony herein. Plaintiff slipped and fell on his back while on duty with the Postal Service on August 23, 1979. He returned to part-time duty on September 16, 1979 and was limited to lifting 35 pounds for several months thereafter.

19. Supervisor Krend testified that she began supervising plaintiff in November 1982. He was able to and regularly performed all of the duties of a city letter carrier which involved prolonged standing, walking, stooping, bending and lifting mail bags and parcels weighing up to 70 pounds. Plaintiff delivered mail on five different routes per week, for which he was paid at a higher rate of pay than other letter carriers. One of those routes required plaintiff to walk 6 to 8 miles per day carrying on his back a mail bag which could weigh up to 35 pounds. Plaintiff never complained to Supervisor Krend that he was physically unable to perform these duties, nor did he ever request to be placed on light duty. He did request auxiliary assistance from time to time so as to finish his delivery work within his 8 hour work day. Krend frequently informed plaintiff she thought he was too slow in completing his mail deliveries. His reply was that his route was too long and could not be completed in 8 hours. He never informed Krend that he could not complete his work in a more timely manner because of his back problems.

20. Plaintiff testified that most of his absences in 1982 and 1983 before his discharge were caused by his back problems. Some mornings he would be in such pain that he would not be able to get out of bed. He testified that his pain was relieved by treatment including medication, therapy and whirl pool. During his last year and one-half at work, his absences were usually from one to three days in length.

21. Documentary evidence establishes that in 1982 plaintiff took sick leave on 12 occasions causing a loss of about 29 days of work. In 1983, prior to his discharge in July, plaintiff took sick leave on 4 occasions causing a loss of 7 days of work. The Administrative Record contains medical statements submitted by plaintiff to cover 13 of the 16 absences in issue. All except one of those statements establish that in 1982, 5 of plaintiff's 12 absences were caused by chronic lumbar strain or low back pain. In 1983 two of the 4 absences were caused by the same reasons. In none of those 7 cases was plaintiff limited in performing his full duties upon his return to work. Thus, the record establishes that 9 of the 16 absences in issue were caused by health matters not related to plaintiff's back such as anxiety neurosis, bronchitis, laryngitis and pneumonia.

22. Frank Pineda, Visalia Postmaster since 1973, has been employed in that office continuously since 1958. He has known the plaintiff since he was hired in 1970, and indeed for a few years they were next door neighbors in Visalia. The Postmaster testified that he was aware that plaintiff had suffered a back injury in Vietnam and an on-the-job injury in 1979. Also, he testified that about one-half of plaintiff's absences in 1982 and 1983 were caused by his back impairment. However, he testified that plaintiff was able to perform his full duties as a letter carrier when he was at work during this period. He did not regard plaintiff's back impairment as a physical handicap because it did not interfere with his job duties and there were never any permanent limitations on plain-

tiff's ability to perform all of his letter carrier duties. Furthermore, plaintiff never claimed he was handicapped and never asked for any accommodation for a handicap.

23. The Postmaster testified that the motivating cause of plaintiffs discharge was his submission of a falsified medical certificate. He testified that he would have discharged plaintiff for that misconduct even if he had had perfect attendance. However, because plaintiff's attendance was unsatisfactory and was a serious matter, that was included as a second reason for the discharge.

24. At the MSPB hearing plaintiff testified that he personally saw Dr. Katano alter the medical certificate in issue in his office on May 21, 1983 (Tr. 322). At the trial, plaintiff testified on direct examination that he pointed out the error on the medical slip to Dr. Katano, who then left the room, and returned shortly thereafter and handed plaintiff the slip with the 4 altered. After this conflicting testimony was pointed out to plaintiff on cross examination, he testified that his testimony at the MSPB hearing was correct and his prior testimony on this matter at the trial was not correct.

25. The record establishes that during plaintiff's employment he filed numerous EEO complaints with the Postal Service over his own discipline and personnel matters. Postmaster Pineda and Supervisor Krend testified that plaintiff never alleged in his EEO complaints that he was a handicapped person, but that the basis for most such complaints was his national origin, Hispanic. Plaintiff testified that in several of his personal EEO complaints he alleged he was a handicapped person. However, he did not offer into evidence copies of any EEO complaints, or other documentary evidence to support his testimony.

26. Plaintiff did not offer any expert testimony from any of his physicians or other physicians, nor does any appear in the Administrative Record, to establish that his back problem was an impairment which substantially limited one or more of his major life activities. Postal Service tes-

timony established that while at work plaintiff had no difficulty performing manual tasks, walking, hearing, speaking, breathing, learning or working. Postmaster Pineda testified that during the years he lived next door to plaintiff, he saw him engaging in normal activities such as mowing the lawn and swimming in his back yard pool.

## CONCLUSIONS OF LAW

### A. *Judicial Review of the MSPB Decision*

1. This Court has jurisdiction to judicially review the MSPB's decision on plaintiff's discharge and to consider his claim of handicap discrimination pursuant to the Civil Service Reform Act (5 U.S.C. § 7703(b)(2) and (c)), and the Rehabilitation Act (29 U.S.C. § 794). Remedies, procedures and rights set forth in Title VII of the Civil Rights Act (42 U.S.C. § 2000e–16) are available in the Rehabilitation Act cases (5 U.S.C. § 794a). There is no dispute as to venue.

2. The United States Postal Service is the appropriate defendant in the cause of action in this mixed case seeking judicial review of the MSPB decision. (5 U.S.C. § 7703(a)(2)).

3. This Court sits as an appellate body to review the decisions of the MSPB. This review is limited and defined by Act of Congress (5 U.S.C. § 7703(c)). The agency action must be affirmed unless it is found to be:

a. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

b. obtained without procedures required by law, rule, or regulation having been followed; or

c. unsupported by substantial evidence. *Graybill v. U.S. Postal Service*, 782 F.2d 1567, 1570 (Fed.Cir.1986); *Thompson v. U.S. Postal Service*, 596 F.Supp. 628 (D.C. Va.1984).

4. Judicial review of MSPB decisions is very narrow and is based exclusively on the administrative record (5 U.S.C.

§ 7703(c)). *McClaskey v. Department of Energy,* 720 F.2d 583, 586 (9th Cir.1983); *Calhoun v. Bailar,* 626 F.2d 145 (9th Cir. 1980); *Thompson v. U.S. Postal Service,* 596 F.Supp at 631.

■ 5. A reviewing court must defer to the agency's choice of penalty, unless the agency abuses its discretion. *McLeod v. Department of Army,* 714 F.2d 918, 920 (9th Cir.1983); *Brewer v. U.S. Postal Service,* 647 F.2d 1093, 1098, 227 Ct.Cl. 276 (1981), *cert. den.,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L Ed.2d 296 (1982).

■ 6. Discretion in disciplinary matters has long been held to rest with the administrative agency, and the Court may not reweigh the evidence or substitute its own judgment for that of an agency determination adequately supported. *United States v. Testan,* 424 U.S. 392, 406, 96 S.Ct. 948, 957, 47 L.Ed.2d 114 (1976); *McCartin v. Martin,* 674 F.2d 1317, 1320 (9th Cir. 1982); *Green v. Schweiker,* 694 F.2d 108, 110 (5th Cir.1982).

7. The reviewing court should defer to the MSPB's judgment unless the penalty is so harsh or disproportionate to the offense as to constitute an abuse of discretion. *McClaskey v. Department of Energy,* 720 F.2d at 586; *Weiss v. U.S. Postal Service,* 700 F.2d 754 (1st Cir.1983).

8. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951); *Brewer v. U.S. Postal Service,* 647 F.2d at 1096.

■ 9. In evaluating substantial evidence in an administrative record, it is recognized that the strict rules of evidence do not control an MSPB hearing. *Debose v. U.S. Dept. of Agriculture,* 700 F.2d 1261, 1268 (9th Cir.1980); *Calhoun v. Bailar,* 626 F.2d at 148–149.

■ 10. The classic exception to the strict rules of evidence in the administrative context concerns hearsay evidence. The only limit to the admissibility of hearsay evidence is that it bears satisfactory indicia of reliability, be probative and it use fundamentally fair. *Richardson v. Perales,* 402 U.S. at 407–408, 91 S.Ct. at 1430 (1971); *Hoska v. Department of Army,* 677 F.2d 131, 139 (D.C. Cir.1982); *Green v. Schweiker,* 694 F.2d at 119 (5th Cir.1982).

■ 11. The determination of the credibility of witnesses is within the discretion of the MSPB Presiding Official who heard their testimony and saw their demeanor. *Jackson v. Veterans Administration,* 768 F.2d 1325, 1331 (Fed.Cir.1985); *De Sarno v. Department of Commerce,* 761 F.2d 657, 661 (Fed.Cir.1985); *Griessenauer v. Department of Energy,* 754 F.2d 361, 364 (Fed.Cir.1985).

■ 12. The parties to an MSPB proceeding may request that relevant witnesses be subpoened. (5 C.F.R. 1201.81). Where a party has a right to subpeona witnesses, and he does not do so, he cannot later complain of the fact that he has been denied the right of confrontation of adverse witnesses and the right of cross-examination. *Cohen v. Perales,* 412 F.2d 44, 51 (5th Cir.1969), reversed on other grounds, *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Accordingly, plaintiff cannot establish that he was prejudiced by the fact that Dr. Katano did not testify in the MSPB proceeding, because plaintiff elected not to subpoena him as a witness in that proceeding.

■ 13. The relevant and creditable evidence was carefully explicated in the MSPB decision dated June 21, 1984. The administrative record contains substantial evidence to support the MSPB's credibility findings and conclusion that plaintiff engaged in the falsification of the medical certificate with which he was charged.

■ 14. Based on the recent MSPB decision in *Hayward Fleming v. U.S. Postal Service,* 30 M.S.P.R. 302 (1986), in which the MSPB reversed its 1982 decision in *Webb v. U.S. Postal Service,* 9 MSPB 749, 10 M.S.P.R. 536, a federal employee's sick leave absences which were approved, may

be used to prove unsatisfactory attendance if the employee had been given adequate notice regarding the gravity of his irregular attendance.

▪▪▪▪ 15. Because plaintiff had been given such adequate notice, it is concluded, contrary to the MSPB decision, that all of his sick leave absences in 1982 and 1983 should be considered by the Court in connection with the charge of unsatisfactory attendance. As those absences are supported by substantial evidence in the administrative record, and clearly occurred, such evidence establishes that in 1982 and 1983 plaintiff's attendance was unsatisfactory as charged by the Visalia Post Office.

▪▪▪▪ 16. The fact that honesty and fair dealing are imperative between a federal employee and the Government is implicit and needs no further elaboration. *Tucker v. United States,* 624 F.2d 1029, 224 Ct.Cl. 266 (1980). When an employee is dismissed for an offense involving deliberate deception, the required nexus between the misconduct and the efficiency of the service is obvious. *McClaskey v. U.S. Dept. of Energy,* 720 F.2d at 589; *Book v. U.S. Postal Service,* 675 F.2d 158 (8th Cir.1982). Because the plaintiff's falsification and unsatisfactory attendance were clearly job related, such on duty misconduct raises a presumption that the required nexus has been met. *McClaskey,* at 589. Moreover, the MSPB's conclusions as to nexus are affirmed.

17. The discharge of plaintiff by the Postal Service was not arbitrary, capricious or an abuse of discretion. The action was taken in compliance with applicable law, rules and regulations. Accordingly, the MSPB's creditability, resolutions, findings of fact and conclusions of law are hereby affirmed.

B. *Handicap Discrimination—Trial De Novo*

1. Plaintiff's second cause of action alleges that his discharge was based on a physical handicap and therefore was discriminatory in violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, as amended by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, (29 U.S.C. §§ 794, 794a).

▪▪▪ 2. Defendant Preston R Tisch, Postmaster General of the United States, is subject to 29 U.S.C. § 791 and the regulations adopted pursuant thereto, 29 C.F.R. 1613.701, *et seq.; Bey v. Bolger,* 540 F.Supp. 910, 927 (D.C.E.Pa.1982).

▪▪▪ 3. To prove his claim that he was discriminated against because of a physical handicap, plaintiff must satisfy the threshold requirement that he is a handicapped person as defined by the Rehabilitation Act as amended. *de la Torres v. Bolger,* 781 F.2d 1134, 1135 (5th Cir.1986); *Jasany v. U.S. Postal Service,* 755 F.2d 1244, 1248 (6th Cir.1985); *Stevens v. Stubbs,* 576 F.Supp. 1409 (D.C.Ga.1983); *E.E. Black Ltd. v. Marshall,* 497 F.Supp. 1088 (D.Hawaii 1980).

4. The Rehabilitation Act defines a handicapped person as one who: (i) has a physical or mental impairment which substantially limits one or more of such persons major life activities; (ii) has a record of such impairment, or (iii) is regarded as having such an impairment. 29 U.S.C. § 706(7)(B) and 29 C.F.R. 1613.702(a). *de la Torres v. Bolger,* 781 F.2d at 1136; *Jasany v. U.S. Postal Service,* 755 F.2d at 1248; *E.E. Black Ltd. v. Marshall,* 497 F.Supp. at 1090.

▪▪▪ 5. The burden is on the plaintiff to establish the existence of an impairment that substantially limits a major life activity as an element of the plaintiff's *prima facie* case. *Jasany v. U.S. Postal Service,* 755 F.2d at 1249; *Pushkin v. Regents of Univ. of Colorado,* 658 F.2d 1372 (10th Cir.1981).

6. Major life activities is defined in 29 C.F.R. 1613.702(c) as "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working". *Jasany,* at 1248.

▪▪▪ 7. Even if plaintiff's back problems were found to be a physical impairment, the impairment has not substantially

limited his major life activities. He had 5 brief absences from work in 1982 and 2 brief absences in 1983 caused by chronic lumbar stain, or low back pain. Plaintiff was otherwise able to perform all of the arduous duties of a city letter carrier at the Visalia Post Office for 40 hours per week plus regular overtime. His duties included heavy lifting, prolonged standing, walking 6 to 8 miles at a time, loading and unloading vehicles, pushing, pulling, bending, stooping, and carrying a mail bag weighing up to 35 pounds for prolonged periods while making mail deliveries. Furthermore, plaintiffs other absences in 1982 and 1983 were caused by a variety of other illnesses that were not related to his back problems.

8. Plaintiff was not perceived by his supervisors as a handicapped person in 1982 and 1983 because he performed all of the regular duties of his position as a city carrier, had no permanent limitation on his ability to work, had no temporary limitations on his ability to work upon returning from sick leave, and made no requests for any accommodations because of his back problems.

9. Plaintiff failed to produce any medical testimony from his personal physician or any orthopedic specialist to establish that he is a handicapped person as defined by the Rehabilitation Act and the supporting regulations.

10. Plaintiff has failed to meet his burden of proving that he is a handicapped person as defined by the Rehabilitation Act and the supporting regulations. Accordingly, he is not entitled to the protection of that Act or those regulations. *de la Torres,* 781 F.2d at 1138; *Jasany,* 755 F.2d at 1250; *Stevens v. Stubbs,* 576 F.Supp at 1414.

11. Plaintiff has failed to meet his burden of proving that the stated reasons for his discharge were a pretext and the true reason was a physical handicap.

12. Contrary to the allegations of plaintiff's complaint that he was discharged because of a physical handicap, it is concluded that the true reasons for his discharge were the falsification of a medical certificate and unsatisfactory attendance. Accordingly, he has failed to prove that he was discharged in violation of the Rehabilitation Act.

An appropriate Order will be entered.

### ORDER

AND NOW, TO WIT, this 16th day of March 1987, for the reasons expressed in the foregoing findings of fact and conclusions of law, IT IS ORDERED, as follows:

1. Judicial review of the MSPB administrative record establishes that the MSPB decision sustaining plaintiff's discharge should be, and it hereby is, affirmed;

2. The trial *de novo* of plaintiff's handicap discrimination complaint establishes that said complaint should be, and hereby is, dismissed with prejudice; and

3. Judgment is entered in favor of the defendants and against plaintiff in all causes of action stated in plaintiff's complaint.