**Niki A. LAWRENCE, Plaintiff,**

v.

**METRO–DADE POLICE DEPARTMENT, Metro–Dade County, Thomas Lamont, Wayne Seme, Defendants.**

**No. 90–1830–CIV.**

United States District Court, S.D. Florida, Miami Division.

Oct. 5, 1993.

---

6. Local Rule 4.04(e) prohibits contact of potential class members by parties or counsel.

William R. Amlong, Karen Amlong, Amlong & Amlong, P.A., Fort Lauderdale, FL, for plaintiff.

Carol A. Anderson, Asst. County Atty., Miami, FL, for defendants.

Rhea Pincus Grossman, Rhea P. Grossman, P.A., Miami, FL, for Lamont and Seme.

Robert A. Ginsburg, Miami, FL, for Metro Dade County.

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendant Metropolitan Dade County's Motion for Summary Judgment Regarding Counts III and V [D.E. 97].

THE COURT has considered the Motion, the response and the pertinent portions of the record, and being otherwise fully advised in the premises is persuaded that said Motion should be granted.

### Background

Plaintiff is a female police sergeant with the Metropolitan Dade County Public Safety Department. Complaint, ¶ 1 [D.E. 29]. Defendant Metropolitan Dade County ("METRO") employs Plaintiff in its Police Department. Complaint, ¶ 5 [D.E. 29]. Defendant Lamont was the district commander of the Cutler Ridge police station to which Plaintiff was assigned in 1989. Complaint, ¶ 7 [D.E. 29].

On May 18, 1989 Plaintiff requested she be allowed to wear non-regulation footwear. Deposition of Lamont, pp. 34–35, Defendant's Motion, Attachment A [D.E. 97]. Plaintiff had requested this deviation from the pre- scribed footwear because she suffered from "hammer toes", Complaint, ¶ 16 [D.E. 29], an apparent result of Plaintiff's "forefoot varus and rearfoot valgus deformity". Letter of Steven Kringold, D.P.M., Defendant's Motion, Attachment F [D.E. 97].

On May 22, 1989 Plaintiff submitted a letter from a physical therapist stating Plaintiff's gun belt irritated her lower back. Deposition of Lamont, pp 35–36, Defendant's Motion, Attachment A [D.E. 97]; Plaintiff's Deposition, p. 48, Defendant's Motion, Attachment J [D.E. 97]; Letter of Bruce Wilk, Defendant's Motion, Attachment C [D.E. 97]. This irritation was apparently due to "congenital Kyphosis of [Plaintiff's] lumbar spine", Letter of Dr. Russin, Defendant's Motion, Attachment G [D.E. 97], which is a lack of normal spinal curvature. Deposition of Russin, Defendant's Motion, Attachment O [D.E. 97]. Defendant Lamont then removed Plaintiff from road patrol duty and assigned her to desk duty beginning May 23, 1989. Deposition of Lamont, pp 36–38, Defendant's Motion, Attachment A [D.E. 97]; Complaint, ¶¶ 15–16 [D.E. 27].

On June 1, 1989, Plaintiff informed Defendant Lamont that she was physically fit for duty, and presented three letters in support of this declaration. Deposition of Lamont, pp 38–39, Defendant's Motion, Attachment A [D.E. 97]; Plaintiff's Memorandum, Defendant's Motion, Attachment K [D.E. 97]. Nevertheless, Lamont scheduled Plaintiff to see a county doctor on June 7, 1989 regarding her footwear situation, and to see a county doctor on June 8, 1989 regarding her spinal condition. Deposition of Lamont, p 39, Defendant's Motion, Attachment A [D.E. 97].

After Plaintiff had been examined by county physicians, Defendant Lamont allowed Plaintiff to wear the alternative footwear she had requested. Deposition of Lamont, p. 39, Attachment A [D.E. 97]. However, Lamont did require Plaintiff to wear the standard uniform gun belt while she worked at the desk even though Plaintiff had previously declared that wearing the belt at the desk caused her pain. Complaint, ¶ 19 [D.E. 29].

In Count III of the Amended Complaint Plaintiff sues Lamont and METRO, alleging that Lamont discriminated against her because of her "hammer toes" condition by reassigning her to desk duty. Complaint [D.E. 29]. In Count V of the Amended Complaint Plaintiff sues Lamont and METRO, alleging that Lamont discriminated against her because of her spinal irregularity by insisting that Plaintiff wear her standard gun belt while performing desk work. Complaint [D.E. 29]. Plaintiff contends these acts of discrimination are prohibited by the Rehabilitation Act of 1973, and asks for declaratory and injunctive relief, punitive damages, costs and attorney's fees. 29 U.S.C. § 794, Complaint, ¶¶ 1–5, 7, 15–17, 19 [D.E. 29]. Defendant METRO has moved for Summary Judgment on Counts III and V, asserting Plaintiff is not an "individual with a disability" entitled to the protection of the Rehabilitation Act. [D.E. 97].

## The Legal Standard

The procedure for disposition of a summary judgment motion is well established. Summary judgment is authorized only when:

> the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56. The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a

sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the Court should deny summary judgment. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. at 1610. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## Analysis

■ Title V of the Rehabilitation Act of 1973 ("Act"), as amended 29 U.S.C. § 701 *et seq.,* first established civil rights protections for individuals with disabilities. House Report (Judiciary Committee) on the Americans With Disabilities Act, No. 101–485 (III), 101st Cong., 2nd Sess. 24 (1990), *reprinted in* 1990 U.S.C.C.A.N. Vol. 4 p. 267, 446 (1990).

Section 504 of the Act, as amended, 29 U.S.C. § 794, prohibits discrimination against individuals with disabilities by recipients of federal financial assistance. *School Board of Nassau County, Florida v. Arline*, 480 U.S. 273, 275, 107 S.Ct. 1123, 1125, 94 L.Ed.2d 307 (1987).[1] The basic purpose of the Act

> is to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudiced attitudes or the ignorance of others.... Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.

*Id.*, 480 U.S. at 284, 107 S.Ct. at 1129.

The Act, as amended, 29 U.S.C. § 794(a) provides that "no otherwise qualified individual with a disability ... as defined in section 706(8) of this title, shall, solely by reason of her or his disability ... be subjected to discrimination...." Defendant does not contest Plaintiff's assertion that Defendant is subject to the requirements of the Act. Defendant's Motion, p. 7 [D.E. 97]. However, Defendant does contest Plaintiff's assertion that she qualifies for the protection of the Act. Defendant's Motion [D.E. 97].

■ As the first element of a prima facie case of discrimination under the Rehabilitation Act, Plaintiff must establish she is an "individual with a disability" under the terms of the Act. *Plummer by Plummer v. Branstad*, 731 F.2d 574, 577 (8th Cir.1984); *Strathie v. Department of Transportation*, 716 F.2d 227, 230 (3rd Cir.1983); *Joyner by Lowry v. Dumpson*, 712 F.2d 770, 774 (2d Cir. 1983).[2]

An "individual with a disability" is defined as

> Any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(8)(B). In turn, regulations promulgated pursuant to the Rehabilitation Act define "physical impairment" to include "any physiological disorder or condition ... affecting ... [the] musculoskeletal [system]", 29 C.F.R. § 1613.703(b), and define "major life activities" to include such activities as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1613.703(c).

■ The gravamen of Plaintiff's argument is that the physical irregularities of her feet and spine substantially limited her ability to work, a major life activity, and therefore she is an "individual with a disability" for the purposes of the Rehabilitation Act. Plaintiff's Response, p. 8 [D.E. 103]. Defendant does not contest Plaintiff's assertion that she possesses physical impairments; however, Defendant does dispute Plaintiff's contention that her impairment substantially limited a major life activity so as to bring her within the scope of the Act. Defendant's Motion [D.E. 97].

■ The protection of the Rehabilitation Act extends only to those individuals whose disabilities constitute a significant barrier to employment, or significantly decrease the ability of these individuals to obtain satisfactory employment. *Forrisi v. Bowen*, 794 F.2d 931, 933–35 (4th Cir.1986); *Jasany v.*

---

1. Title I of the Americans with Disabilities Act, effective July 26, 1990, amended portions of the Rehabilitation Act to read "individual with a disability" instead of "handicapped individual". When appearing in cases cited by this Order, the term "handicapped individual" is equivalent to "individual with a disability" for purposes of the Rehabilitation Act.

2. The Court rejects Plaintiff's assertion that the "critical issue is whether Niki Lawrence was in the summer of 1989 an 'otherwise qualified individual' ". Plaintiff's Response, p. 5 [D.E. 103]. The section of the Rehabilitation Act under

which Plaintiff brings suit, 29 U.S.C. § 704, refers to 29 U.S.C. § 706(8), which defines the term "individual with a disability". For the Court to render its decision based solely upon whether Plaintiff was an "otherwise qualified individual", the Court would have to assume Plaintiff possesses a disability that brings her within the scope of the Act—the very point Defendant contests. *See Elstner v. Southwestern Bell Telephone Co.*, 659 F.Supp. 1328 (S.D.Tex. 1987) ("**after** establishing that [s]he is handicapped, plaintiff must establish that [s]he is a 'qualified handicapped individual' ") (emphasis added).

*United States Postal Service,* 755 F.2d 1244, 1248–50 (6th Cir.1985). Without such a showing, even those who might normally be considered "disabled" are not entitled to protection under the Act. *See Wimbley v. Bolger,* 642 F.Supp. 481, 485 (W.D.Tenn.1986), *aff'd* 831 F.2d 298 (6th Cir.1987) (fact that employee considered 30 percent disabled does not automatically render him handicapped for the purposes of the Rehabilitation Act).

 To determine whether a physical impairment substantially limits an individual's ability to work so as to constitute a disability under the Rehabilitation Act, the Courts must evaluate the impairment with respect to the actual employee. *Jasany,* 755 F.2d at 1249 (6th Cir.1985); *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088, 1099 (D.Hawaii 1980) ("it is the impaired individual that must be examined, and not just the impairment in the abstract"). In other words, the question that concerns the Court is to what degree Plaintiff's impairment restricts her ability to obtain the type of employment for which she is trained. *Forrisi,* 794 F.2d at 933 (4th Cir.1986), *citing Jasany,* 755 F.2d at 1249.

The uncontroverted evidence before the Court indicates that Plaintiff's physical deformities do not substantially limit Plaintiff's ability to work. Plaintiff's "hammer toes" condition, for example, does not interfere with her job as a police sergeant. The Metropolitan Dade County Safety Department already has a procedure that allows its officers, when medically required, to wear alternative footwear. Deposition of Lamont, pp. 34–35, Defendant's Motion, Attachment A [D.E. 97]. After her examination by a county doctor Plaintiff's request to wear combat boots was granted. Deposition of Lamont, p. 39, Defendant's Motion, Attachment A [D.E. 97]. Plaintiff is still employed as a police sergeant by the Metro–Dade Police Department, Plaintiff's Deposition, p. 4, Plaintiff's Response, Exhibit 1 [D.E. 103], presumably still wearing these boots and functioning at full capacity. See Letter of Steven Kringold, Defendant's Motion, Attachment F [D.E. 97].

Similarly, there is no indication that Plaintiff's spinal irregularity substantially inter-

feres with her work as a police sergeant. During her deposition Plaintiff admitted her spinal condition did not interfere with her patrol duties. Plaintiff's Deposition p. 49, Defendant's Motion, Attachment J [D.E. 97]. In her June 1, 1989 Memorandum to Lamont Plaintiff declared that only a week earlier she had "taught six hours of defensive tactics ... includ[ing] one and one-half hours of strenuous calisthenics and four and one-half hours of demonstrating numerous body throws". Defendant's Motion, Attachment K [D.E. 97]. Plaintiff also states in the memorandum that she had taught defensive tactics on the two days immediately preceding the memorandum. The record also contains numerous letters from doctors attesting to Plaintiff's physical competence to perform her duties. See Letter of Richard Corson, Defendant's Motion, Attachment E [D.E. 97] (Plaintiff is physically fit to perform her job as a police officer working in uniform patrol); Letter of Fleur Sack, Defendant's Motion, Attachment E, [D.E. 97] (Plaintiff is able to perform her duties as a police officer working in uniform patrol); Letter of Michael Russin, Defendant's Motion, Attachment G [D.E. 97] (Plaintiff only wants not to wear gun belt during time in station; able to wear belt all other times); Letter of David Lehrman, Defendant's Motion, Attachment H [D.E. 97] (Plaintiff does not have any problem wearing the gun belt while doing her normal duties on the street). Dr. Michael Russin, one of the doctors who examined Plaintiff, stated in his deposition that Plaintiff was "able to conduct and continue to perform all her duties as a police officer, only she had most of her discomfort while wearing the belt in the station." Deposition of Russin p. 15, Defendant's Motion, Attachment O [D.E. 97].

Finally, the record is replete with evidence indicating that Plaintiff's impairments did not substantially limit any other aspect of her life. Dr. Russin stated in his deposition that Plaintiff's back had a good range of motion, that Plaintiff experienced no pain on motion, and suffered no "measurable impairment" under either the Minnesota or the AMA Guides on permanent impairment. Deposition of Russin, pp. 5, 10, Defendant's Motion,

Attachment O [D.E. 97]. Plaintiff admitted in her deposition that her back condition did not interfere with "standing, walking, running, exercising, driving, doing house work, yard work". Plaintiff's Deposition, p. 50, Defendant's Motion, Attachment J [D.E. 97]. In short there is absolutely no evidence in the record to indicate Plaintiff's physical impairments substantially limited any major life activities.[3] *See, Diaz v. U.S. Postal Service,* 658 F.Supp. 484, 491–92 (E.D.Cal.1987) (even if back injury constitutes an impairment, plaintiff is not disabled where otherwise able to perform all the duties of his job).[4]

■■■ To the extent Plaintiff asserts she was physically incapable of performing her desk work while wearing her gun belt, Plaintiff has not stated a claim under the Rehabilitation Act. The Courts are in agreement that the fact a plaintiff is incapable of performing or obtaining one particular job does not make that person an individual with a disability under the Act. *See Forrisi,* 794 F.2d at 934–35; *Welsh v. City of Tulsa, Oklahoma,* 977 F.2d 1415, 1417 (10th Cir. 1992); *Byrne v. Board of Education, School of West Allis,* 979 F.2d 560, 567 (7th Cir. 1992). The uncontroverted evidence clearly demonstrates Plaintiff was capable of performing most of the duties of her employment.

A careful reading of the Complaint and the pleadings in this case indicates Plaintiff may have misconstrued the purposes of the Rehabilitation Act and the relief available under it.

Indeed, at the Pretrial Conference on October 1, 1993 Plaintiff, through her counsel, argued that she developed Post–Traumatic Stress Syndrome, a condition that ultimately resulted in her being stripped of her badge and gun, because Lamont required her to wear the gun belt while on desk duty. Therefore, Plaintiff argues, she should be able to sue Defendants under the Rehabilitation Act for failing to accommodate her back condition by relieving her of the obligation to wear the standard gun belt. At one point, Plaintiff describes Lamont's actions as "employee torture". Plaintiff's Response, p. 12 [D.E. 103]. Assuming, *arguendo,* that this characterization is accurate, the Rehabilitation Act simply does not provide Plaintiff any relief.

■■■ The Act does not supply disabled individuals with a tort remedy; instead, the Act functions prophylactically, prohibiting federally funded employers from discriminating against persons with "disabilities"—a defined term. Since Plaintiff was not disabled within the meaning of the Act at the time Lamont required her to wear the standard gun belt, Lamont's demands, no matter how unreasonable or injurious, are not actionable under the Rehabilitation Act. It may be Plaintiff can state a claim against the Defendants for the acts alleged under some other legal theory, but the Rehabilitation Act does not provide relief.[5]

Accordingly, it is

3. The Court is not ruling on the degree of Plaintiff's impairment as a matter of law. Rather, the Court finds that there is no evidence in the record to indicate that any of Plaintiff's major life activities, as defined for purposes of the Rehabilitation Act, were affected.

4. The Court notes Plaintiff's statement that Lamont "seiz[ed] on what he regarded as impairments" when he reassigned her to desk duty. Plaintiff's Response, p. 12 [D.E. 103]. To the extent Plaintiff is asserting she is an "individual with a disability" based on Lamont's perceptions of her pursuant to 29 U.S.C. § 706(8)(B)(iii) the Court finds this argument unpersuasive. There is no evidence in the record that Lamont believed Plaintiff suffered from a substantial limitation of a major life activity. On the contrary, as Plaintiff's district commander Lamont must have known of Plaintiff's high degree of physical fitness.

5. In Counts VI and VIII of her Amended Complaint Plaintiff has sued Lamont and the County under the Rehabilitation Act for having discriminated against Plaintiff because she was psychologically disabled. For purposes of the Rehabilitation Act the origin of Plaintiff's disability is irrelevant. *See* House Report (Judiciary Committee) on the Americans with Disabilities Act, No. 101–485(III), 101st Cong., 2nd Sess. 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. Vol. 4, pp 451–52 ("The cause of a disability is always irrelevant to the determination of disability"). If Plaintiff is psychologically disabled, and if the Defendants discriminated against her because of this disability, then Plaintiff may have a claim against the Defendants under the Act. However, because the present Motion addresses only Counts III and V of the Amended Complaint, this issue is not before the Court.

ORDERED AND ADJUDGED that Defendant Metropolitan Dade County's Motion for Summary Judgment Regarding Counts III and V [D.E. 97] is GRANTED. It is further

ORDERED AND ADJUDGED that Summary Judgment with respect to Counts III and V is hereby entered in favor of Defendant THOMAS LAMONT sua sponte.[6]

DONE AND ORDERED.

6. At the Pretrial Conference on October 1, 1993 Plaintiff's counsel conceded that Summary Judgment in favor of Lamont for Counts III and V would be proper should the Court find Plaintiff was not entitled to protection under the Rehabilitation Act under these counts.